1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

FITNESS ANYWHERE LLC,

        Plaintiff,

    v.

WOSS ENTERPRISES LLC,

        Defendant.

Case No.  14-cv-01725-BLF

**ORDER CONSTRUING CLAIMS IN U.S. PATENT NOS. 7,044,896; 7,806,814; AND 8,043,197**

[Re:  ECF 67, 71, 75]

Plaintiff Fitness Anywhere LLC ("TRX") brings this patent and trademark infringement suit against Defendant Woss Enterprises LLC ("Woss") alleging infringement of three of TRX's patents directed at fitness equipment: U.S. Patent Nos. 7,044,896 ("the '896 Patent"); 7,806,814 ("the '814 Patent"); and 8,043,197 ("the '197 Patent") (collectively, "Asserted Patents").  The Court held a *Markman*[1] hearing on October 20, 2015 for the purpose of construing nine disputed terms in the Asserted Patents.

## I.  BACKGROUND

### A.  Background and Description of the Invention

TRX asserts that eight Woss products infringe claims 1-7, 9-18, 20-22, and 24-29 of the '896 Patent, claims 1-25 of the '814 Patent, and claims 1-2, 4, and 7-10 of the '197 Patent.  The '896 Patent and the '197 Patent relate to resistance exercise devices, and the '814 Patent relates to particular hand and foot grips.  The '814 Patent claims priority to the '896 Patent.

---

[1] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

The '896 Patent and the '197 Patent disclose a resistance exercise device comprising three basic parts: an anchor (410); an inelastic, adjustable-length strap (420); and two ends with grips (421a and 421b).  Figure 4 appears in each of the Asserted Patents:



FIG._4

Claim 1 of the '896 Patent claims the exercise device as:

> 1. An adjustable, inelastic exercise device comprising:
>
> an elongated member [420] having a pair of ends [421a, 421b] separated by a length and a mechanism [422a, 422b] for adjusting said length, where said elongated member is a substantially inelastic flat strap and, where said pair of ends includes a first end having a first grip [423a] and a second end having a second grip [423b]; and
>
> an anchor [410] having a first portion [411] for mounting to a structure and a second portion [413] including a flexible portion to support said elongated member at a position along said length when both of said grips are pulled in a direction away from said anchor, wherein said flexible portion includes a loop [415], and wherein said elongated member passes through said loop.

To use the exercise device, the user secures the anchor to a support, such as a door, and then can perform various exercises by gripping the handles, or placing the user's feet in the handles, and positioning the user's body in different ways.  '896 Patent col.4 ll.53-57; Figs. 15A-15I (depicting various exercises).

B.    **Procedural Background**

On April 14, 2014, TRX filed the complaint in this action.  ECF 1.  Woss answered the complaint and also asserted a counterclaim against TRX on June 24, 2014.  ECF 16.  TRX filed a

2

motion to dismiss the counterclaim, ECF 20, and Woss filed a first amended counterclaim, ECF 28. TRX filed a motion to dismiss the first amended counterclaim and the Court denied TRX's motion on September 26, 2014, ECF 35. On January 21, 2015, TRX filed an amended complaint. ECF 46. Woss filed a second amended answer and counterclaim on February 20, 2015. ECF 47.

After the parties submitted their Joint Claim Construction and Prehearing Statement, ECF 48, TRX learned that Woss redesigned certain of its accused products. TRX then moved for leave to supplement its infringement contentions, which was granted, ECF 70. In TRX's Opening Claim Construction Brief, TRX indicated that it may wish to have different claim terms construed in light of Woss's redesign. TRX Br. 1, ECF 67. After holding a case management conference, the Court allowed the parties to supplement their claim construction briefing in light of the supplemental infringement contentions. Neither party filed any supplemental briefing.

In addition to the redesign issue, Woss's Responsive Claim Construction Brief included numerous amended proposed constructions. *See* Woss Br., ECF 71. Woss's amendments were purportedly made "to more closely track those of TRX to eliminate as much as possible the substantive issues to be resolved." *Id.* at 1. Although the Court did find some of Woss's amendments helpful, altering a proposed claim construction after filing the Joint Claim Construction and Prehearing Statement is generally disfavored. The parties appeared for a *Markman* hearing on October 20, 2015.

## II.    LEGAL STANDARD

Claim construction is a matter of law. *See, e.g.*, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996). It is a "bedrock principle of patent law" that the "claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). As such, the "appropriate starting point" for a court interpreting the patent "is always with the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). In construing the claims of a patent, a disputed term is generally given "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. The Court reads claims in light of the specification, which is the "single best guide to the meaning

United States District Court
Northern District of California

of a disputed term." *Id.* at 1315.

The interpretation given to a term "can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop within the claim." *Id.*at 1316; *see also Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). The claim language, written description, and patent prosecution history form the intrinsic record that is most significant when determining the proper meaning of a disputed claim. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In some cases, the ordinary meaning of claim language, as understood by a person of skill in the art, may be readily apparent. Claim construction in such cases involves little more than application of the widely accepted meaning of commonly understood words. *See, e.g.*, *Phillips* at 1314. In *CCS Fitness, Inc. v. Brunswick Corp.*, the Federal Circuit stated that "[g]enerally speaking, we indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning." 288 F.3d 1359, 1366 (Fed. Cir. 2002). It continued, however, that "a claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history." *Id.* (citing *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999)).

## III.    AGREED UPON CONSTRUCTIONS

In their initial joint claim construction statement, *see* ECF 48, the parties identified nine terms requiring construction. Through the claim construction briefing, the parties agreed that the term "anchor," which appears in both the '896 Patent and the '197 Patent, need only be construed once. *See* TRX Br. 3; Woss Br. 1.

At the *Markman* hearing, the parties informed the Court that they agreed on the construction of the term "a pair of ends." *Markman* Trans. 10:8-10, ECF 93. TRX also agreed to accept Woss's amended constructions of the terms "loop." *Id.* at 55:17-22. The parties agreed that no construction was necessary for the term "sufficient to prevent movement of said elongated member." *Id.* at 10:8-20. TRX agreed to accept Woss's amended construction of the term "continuous loop." *Id.* at 57:18-21. The parties also agreed to accept the Court's proposal that no construction was necessary for the term "removably connectable." *Id.* at 57:24-58:14. Finally, the

parties agreed on the construction of the term "means for removably connecting said first portion and said second portion." *Id*. at 10:22-11:6.  The Court accordingly adopts and approves the following constructions:

| Term | Construction |
|---|---|
| a pair of ends | two opposite end portions of the elongated member separated by the length and the mechanism |
| loop | a length of material made of one or more pieces formed into a ring or closed or partially closed curved section |
| sufficient to prevent movement of said elongated member | no construction necessary |
| continuous loop | a loop made of one or more pieces formed into a closed curved section |
| removably connectable | no construction necessary |
| means for removably connecting said first portion and said second portion | Function:[2] removably connecting said first portion and said second portion<br><br>Structure: a loop of a substantially rigid material |

## IV.   CONSTRUCTION OF DISPUTED TERMS

Having agreed that the term "anchor," as it appears in both the '869 and '197 Patents needs only one construction, and agreeing on the construction of "a pair of ends," "loop," "sufficient to prevent movement of said elongated member," "continuous loop," "removably connectable," and "means for removably connecting said first portion and said second portion," the parties present two terms requiring construction.  The Court considers each term below.

### A.   "anchor"

| Plaintiffs' Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| something that serves to hold the exercise device firmly or the complementary portion to | Original: a device that serves to hold the exercise device to a support structure | that part of an exercise device that attaches or holds an elongated member to an |

---

[2] Although the parties' agreed upon construction identified the structure corresponding to the function of the means-plus-function term, the parties did not identify the function of the means-plus-function term.  The parties had no objection to the Court's proposed identification of the function as "removably connecting said first portion and said second portion."  *Markman* Trans. 58:14-24, ECF 93.

| the elongated member to form the adjustable, inelastic device | Amended: that part of an exercise device that attaches an elongated member to an external structure | external structure |
|---|---|---|

The term "anchor" appears in each independent claim of the '896 Patent and the '197 Patent.  Claim 1 of the '896 Patent is representative of how the term is used in the claim language:

> 1. An adjustable, inelastic exercise device comprising:
>    an elongated member . . . and
>    an **anchor** having a first portion for mounting to a structure and a second portion including a flexible portion to support said elongated member at a position along said length when both of said grips are pulled in a direction away from said anchor, wherein said flexible portion includes a loop, and wherein said elongated member passes through said loop.

'896 Patent at 11:47-60 (emphasis added).

TRX argues that "anchor" should be construed as "something that serves to hold the exercise device firmly or the complementary portion to the elongated member to form the adjustable, inelastic device."  TRX Br. 7-8.  According to TRX, it derives the first half of its construction – "something that serves to hold the exercise device firmly" – from the specification which provides that the anchor can "support a user's weight" and from the dictionary.  *Id*. at 8 (describing how the dictionary defines an anchor as "something that serves to hold an object firmly.")  TRX argues that the second half of the construction "anchor" reflects the fact that an exercise device is made up of an anchor and an elongated member and therefore the anchor is the "complementary portion to the elongated member to form the [exercise device]."  *Id*.  Woss argues that its amended construction "fits both patents without introducing any terms that will not already be before the jury."  Woss Br. 10.

The Court adopts Woss's amended construction with a modification to reflect that an "anchor" can also "hold" an elongated member to an external structure.  Woss's construction is supported by the '896 Patent's specification, which describes the "present invention" as an exercise device consisting of an elongated member and "an anchor between the grips for attaching to a structure."  '896 Patent col.2 ll.18-20; *see also* TRX Br. 8 ("The user then attaches the exercise device to a support structure such as a door using one of the anchors.").  However,

6

United States District Court
Northern District of California

Woss's construction does not cover the use of an anchor that holds an elongated member to a structure such as a door. *See* '896 Patent col. 5:50-6:2 (describing Figure 3). When the anchor is being used with a door, the anchor is not necessarily attached to the door but rather is positioned in such a way that the anchor is able to hold the elongated member to the door. *Id*. Thus, Woss's construction must be modified to include that an anchor can attach or hold an elongated member. With this modification, Woss's construction accurately, clearly, and succinctly states the purpose of the anchor: to secure the elongated member to a support structure.

In contrast, TRX's construction is overly long and confusing. There is no need to include "alternate" definitions of "anchor," as TRX suggests. *See* TRX Br. 7 ("TRX's version has two alternate definitions using the word "or" to separate them. TRX uses most of WOSS's construction, but adds a much more relevant definition."). Using alternative definitions is likely to confuse the jury, and does not accomplish the purpose of assigning a "fixed, unambiguous, legally operative meaning to the claim." *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1367 (Fed. Cir. 2004). Furthermore, the Federal Circuit has "question[ed] the need to consult a dictionary to determine the meaning of such well-known terms." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004). Accordingly, the Court construes "anchor" as "that part of an exercise device that attaches or holds an elongated member to an external structure." This construction is supported by the specification and appropriately describes the plain and ordinary meaning of "anchor" when read in light of the specification. *Phillips*, 415 F.3d at 1315.

B. **"is integrally attached"**

| Plaintiffs' Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| that is not an add-on or an accessory to the device but is attached in a way to be used in the normal course of exercise of the device | Original: forms a part of the exercise apparatus that is not removeable or intended to be removed from the component to which it is attached<br><br>Amended: the attachment of one component of the exercise apparatus to another component of the exercise apparatus such that it is not removable there from or | is not removable |

7

| | intended to be removed there from | |
|---|---|---|

The phrase "is integrally attached" appears in the independent claims of the '814 Patent, which claim a "hand grip" that "is integrally attached to" a second loop.  Claim 1 of the '814 Patent is representative of how the term is used in the claim language:

> 1. An exercise apparatus comprising:
> an inelastic portion having at least one end including a first loop;
> a hand grip attached to said first loop; and
> a second loop attached to said hand grip,
> where said second loop is a continuous loop which passes through said hand grip,
> where said hand grip **is integrally attached** to said at least one end,
> where said second loop **is integrally attached** to said at least one end, and
> where said exercise apparatus is adapted to support the weight of a user of the exercise apparatus by said hand grip, said second loop, or some combination thereof.

'814 Patent at 19:6-21 (emphasis added).

TRX argues that its construction of "integrally attached" derives from "guidelines" in the specification.  TRX Br. 13.  According to TRX, the specification describes "integral" as "not removable" and that it also defines "removable" as being an "add-on" or "accessory."  *Id*. at 13-14.  TRX argues it derived its construction by combining the specification's definition of "integral" and "removable."  *Id*.  Woss argues that its construction is supported by the '814 Patents' specification and prosecution history.  Woss Br. 13-15.  Woss also argues that TRX's construction could render the '814 Patent claims indefinite.[3]  Woss Br. 12-13.

The '814 Patent describes two types of grips: "alternative grip devices which may be

---

[3] At the *Markman* hearing, Woss, citing *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322 (Fed. Cir. 2006), argued that the Court should consider the accused products in construing the claims.  Contrary to Woss's argument, *Wilson* does not compel the Court to consider the accused products in construing claims in a claim construction hearing.  *Id*. at 1330 (holding that "claims may not be construed with reference to the accused device").  *Wilson* only suggests that "if the litigants cannot themselves inform a trial court of the specific issues presented by the infringement inquiry…then a trial court may refer to the accused product or process for that context during the process."  *Id*. at 1331; *see also U.S. Ethernet Innovations LLC v. Acer Inc.*, No. 10-CV-03724-JW(LB), 2011 WL 2690158, at *3 (N.D. Cal. July 8, 2011); *Sportlite, Inc. v. Genlyte Thomas Grp., LLC*, No. 04-CV-2146-PHX-MHM, 2006 WL 6256315, at *1-*3 (D. Ariz. July 18, 2006).  Accordingly, the Court DENIES Woss's request to consider the accused products in construing the claims.

United States District Court
Northern District of California

removable from the device (that is, are an 'add-on,' or 'accessory' to the exercise device)" and grips "which form part of the device that is not removable (that is are "integral" to the exercise device)." '814 Patent col.13 ll.36-43.  The '814 Patent also describes hand grips that are "integrally attached," col. 3 ll.16-17, versus hand grips that are "removably attached," col. 3 ll.23-24.  In addition, during prosecution of the application leading to the '814 Patent, the patentee amended all of the pending claims to require "integrally attached" hand grips, and cancelled all pending claims requiring "removably attached" hand grips.  *See* ECF 71-4 (originally filed claims).

Although TRX acknowledges that "integral means not removable," TRX Br. 13, TRX's construction seeks a construction of a construction by having the Court further define removable as "not an add-on or accessory to the device" and then qualifying it with the phrase "used in the normal course of exercise."  These additional concepts invite confusion and are unnecessary in understanding the meaning of "integrally attached" as used in the claims.  Moreover, TRX's argument in support of its construction ignores the word "attached" in the term "integrally attached" and overemphasizes the word "integral."  TRX argues that something may be "integral" to the operation of an object even though it may be removed such as how tires are necessary for a car to operate but can be removed.  However, this argument ignores that the "integral" component must be "attached" and therefore is not removable.  The prosecution history also supports that the "integral" component must be "attached" because TRX cancelled all pending claims with the phrase "removably attached" and amended all of the pending claims to add the phrase "integrally attached."  Although Woss's construction better captures the simple distinction between integrally and removably attached, it is also unnecessarily complex.  Accordingly, the Court construes "is integrally attached" simply as "is not removable," as supported by the '814 Patent's specification and prosecution history.

United States District Court
Northern District of California

## V.   ORDER

For the reasons set forth above, the Court construes the following terms:

| Claim Term | Court's Construction |
|---|---|
| a pair of ends | two opposite end portions of the elongated member separated by the length and the mechanism |
| anchor | that part of an exercise device that attaches or holds an elongated member to an external structure |
| loop | a length of material made of one or more pieces formed into a ring or closed or partially closed curved section |
| sufficient to prevent movement of said elongated member | no construction necessary |
| is integrally attached | is not removable |
| continuous loop | a loop made of one or more pieces formed into a closed curved section |
| removably connectable | no construction necessary |
| means for removably connecting said first portion and said second portion | Function: removably connecting said first portion and said second portion<br><br>Structure: a loop of a substantially rigid material |

**IT IS SO ORDERED.**

Dated: November 19, 2015

BETH LABSON FREEMAN
United States District Judge

10