1

2

3    **UNITED STATES DISTRICT COURT**

4    **NORTHERN DISTRICT OF CALIFORNIA**

5    **SAN JOSE DIVISION**

6

7    FITNESS ANYWHERE LLC,                     Case No.  14-cv-01725-BLF

          Plaintiff,
8                                             **ORDER (1) GRANTING IN PART AND**
          v.                                  **DENYING IN PART WOSS'S MOTION**
9                                             **FOR SUMMARY JUDGMENT, (2)**
                                              **DENYING AS MOOT FITNESS**
10   WOSS ENTERPRISES LLC,                    **ANYWHERE'S MOTION FOR**
                                              **PARTIAL SUMMARY JUDGMENT,**
          Defendant.
11                                            **AND (3) DENYING FITNESS**
                                              **ANYWHERE'S MOTION FOR A**
12                                            **PRELIMINARY INJUNCTION**

13                                            [Re:  ECF 115-1, 122, 132]

14

15        This patent and trademark infringement dispute arises between competitors in the fitness

16   and exercise equipment in industry.  Plaintiff Fitness Anywhere LLC ("TRX") alleges Defendant

17   Woss Enterprises LLC ("Woss") infringed three of its patents directed at fitness equipment: U.S.

18   Patent Nos. 7,044,896 ("the '896 Patent"); 7,806,814 ("the '814 Patent"); and 8,043,197 ("the

19   '197 Patent") (collectively, "Asserted Patents").  Before the Court are Woss's motion for summary

20   judgment, TRX's motion for partial summary judgment, and TRX's motion for preliminary

21   injunction.  For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN

22   PART Woss's motion for summary judgment, DENIES TRX's motion for partial summary

23   judgment, and DENIES TRX's motion for preliminary injunction.

24   **I.    BACKGROUND**

25        TRX and Woss make body weight exercise equipment.  TRX asserts that eight Woss

26   products infringe claims 1-7, 9-18, 20-22, and 24-29 of the '896 Patent, claims 1-25 of the '814

27   Patent, and claims 1-2, 4, and 7-10 of the '197 Patent.  Order Construing Claims 1-2, ECF 97.

28   The '896 Patent and the '197 Patent relate to resistance exercise devices, and the '814 Patent

United States District Court
Northern District of California

relates to particular hand and foot grips.

The '896 Patent and the '197 Patent disclose a resistance exercise device comprising three basic parts: an anchor (410); an inelastic, adjustable-length strap (420); and two ends with grips (421a and 421b).  Figure 4 appears in each of the Asserted Patents:



**FIG._4**

Claim 1 of the '896 Patent claims the exercise device as:

> 1. An adjustable, inelastic exercise device comprising:
>
> an elongated member [420] having a pair of ends [421a, 421b] separated by a length and a mechanism [422a, 422b] for adjusting said length, where said elongated member is a substantially inelastic flat strap and, where said pair of ends includes a first end having a first grip [423a] and a second end having a second grip [423b]; and
>
> an anchor [410] having a first portion [411] for mounting to a structure and a second portion [413] including a flexible portion to support said elongated member at a position along said length when both of said grips are pulled in a direction away from said anchor, wherein said flexible portion includes a loop [415], and wherein said elongated member passes through said loop.

To use the exercise device, the user secures the anchor to a support, such as a door, and then can perform various exercises by gripping the handles or placing the user's feet in the handles and positioning the user's body in different ways.  '896 Patent at 4:53-57; Figs. 15A-15I (depicting various exercises).

The '814 Patent discloses an exercise device with a combination grip.  Figure 27 is a perspective view of a grip that may be used as a hand grip or foot grip and includes a hand grip

United States District Court
Northern District of California

(423a), a loop (425a), and a second loop (2710).  '814 Patent at 15:50-60; Fig. 27.



FIG. 27

A user may exercise using either the hand grip (423a) or may place his or her foot between the hand grip (423) and loop (2710).  '814 Patent at 16:25-33.  Claim 1 of the '814 Patent claims the exercise device with a combination grip as:

> 1. An exercise apparatus comprising:
>
> an inelastic portion having at least one end including a first loop;
>
> a hand grip attached to said first loop; and
>
> a second loop attached to said hand grip, where said second loop is a continuous loop which passes through said hand grip,
>
> where said hand grip is integrally attached to said at least one end,
>
> where said second loop is integrally attached to said at least one end, and
>
> where said exercise apparatus is adapted to support the weight of a user of the exercise apparatus by said hand grip, said second loop, or some combination thereof.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary

1  judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions

2  on file, together with the affidavits, if any, show that there is no genuine issue as to any material

3  fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v.*

4  *Catrett,* 477 U.S. 317, 322 (1986).  "Partial summary judgment that falls short of a final

5  determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be

6  tried."  *State Farm Fire & Cas. Co. v. Geary,* 699 F. Supp. 756, 759 (N.D. Cal. 1987).

7      The moving party "bears the burden of showing there is no material factual dispute," *Hill*

8  *v. R+L Carriers, Inc.,* 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court

9  the portions of the materials on file that it believes demonstrate the absence of any genuine issue

10  of material fact."  *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th

11  Cir. 1987).  In judging evidence at the summary judgment stage, "the Court does not make

12  credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a

13  light most favorable to the nonmoving party."  *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.,* 891

14  F. Supp. 510, 513–14 (N.D. Cal. 1995).  For a court to find that a genuine dispute of material fact

15  exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving

16  party]."  *Corales v. Bennett,* 567 F.3d 554, 562 (9th Cir. 2009).

## III.   WOSS'S MOTION FOR SUMMARY JUDGMENT

### A.   The '814 Patent is Invalid as Obvious Based Upon the Prior Art

19      Woss argues that the '814 Patent is invalid because TRX's invention would have been

20  obvious to one of ordinary skill in view of U.S. Patent No. 7,090,622 (the "'622 Patent") as

21  modified by the '896 Patent.  Mot. 2-5, ECF 122.  TRX contends that combining the prior art to

22  reveal the invention claimed in the '814 Patent would not have been obvious to one of ordinary

23  skill in the art.  Opp. 5-8, ECF 130.  Furthermore, TRX argues that there are multiple secondary

24  considerations of nonobviousness that suggest the '814 Patent was not obvious.  *Id.* at 8-10.

#### 1.   Legal Standard

26      A patent is invalid for obviousness "if the differences between the claimed invention and

27  the prior art are such that the claimed invention as a whole would have been obvious before the

28  effective filing date of the claimed invention to a person having ordinary skill in the art to which

United States District Court
Northern District of California

4

the claimed invention pertains." 35 U.S.C. § 103(a).  "Because patents are presumed to be valid, an alleged infringer seeking to invalidate a patent on obviousness grounds must establish its obviousness by facts supported by clear and convincing evidence."  *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006) (internal citation omitted).  While the clear and convincing standard of proving invalidity does not change, the fact that a prior art reference was previously before the Patent Office may affect the weight accorded to the reference.  *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1366 (Fed. Cir. 2007) ("When the party asserting invalidity relies on references that were considered during examination or reexamination, that party bears the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job.") (internal quotation and citation omitted)

The seminal case of *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, (1966) defined the factual framework underlying the ultimate legal question of whether claimed subject matter would have been obvious to one of ordinary skill in the art at the time the invention was made: (1) the scope and content of the prior art; (2) the level of ordinary skill at the time the invention was made; (3) the differences between the prior art and the claimed invention; and (4) secondary or "objective" considerations, (collectively, the "*Graham*" factors).  *Id*.  Objective evidence of nonobviousness can include evidence of the commercial success of an invention, evidence of a long-felt need that was solved by an invention, evidence that others copied an invention, failure of others facing the same state of the art to develop a satisfactory solution, professional approval or skepticism, or evidence that an invention achieved a surprising result. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1569 (Fed. Cir. 1987).  Such evidence must have a nexus, or causal relationship, to the claimed invention in order to be relevant to the obviousness or nonobviousness of the claim. *Id*. at 1571.  Though a court must base its obviousness determination on these factual findings, the question of "[w]hether a claimed invention would have been obvious is a question of law…." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013).

An obviousness challenge can be based on a combination of multiple prior art references but the burden falls on the challenger to show that a skilled artisan would have had a motivation to combine the references.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007).  The

Supreme Court has emphasized that "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton." *Id*. at 421. "[A] court can take account of the inferences and creative steps a person of ordinary skill in the art would employ." *Id*. at 418.

### 2. Scope and Content of the Prior Art (*Graham* Factor 1)

The scope of prior art includes "references that are within the field of the inventor's endeavor," as well as "analogous art [that] a person of ordinary skill would reasonably have consulted…and applied…in seeking a solution to the problem that the inventor was attempting to solve." *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods.*, 21 F.3d 1068, 1071 (Fed. Cir. 1994). TRX does not dispute that the '622 and '896 Patents are within the scope the prior art. Opp. 5, ECF 130.

The parties also do not dispute the content of the prior art. Mot. 3, ECF 122; Opp. 5, ECF 130. The '896 Patent, as shown in Fig. 4 of the patent, discloses: (1) an inelastic portion having at least one end (427a); and (2) a first loop (425a) that is a continuous loop that passes through the tubular handle (421a) and is integrally attached thereto.



*FIG._4*

The '622 Patent is entitled "Exercise Device Grips and Accessories for Exercise Devices," and discloses: (1) a strap that has an end formed into a continuous loop (121) that passes through a tubular handle or hand grip (123); (2) a tubular handle or hand grip (123) integrally attached to the end of a strap (121); and (3) a foot loop (1710). Figure 17A appears in the '622 Patent:

'622 Patent at 14:65-15:19; Fig. 17A.



**FIG. 17A**

The foot loop (1710) disclosed by the '622 Patent is designed to be easily removed.  '622 Patent at 16:1-2.  Fig. 18A shows how the foot grip (1700), which contains the foot loop (1710), is removably attachable using attachment straps (1803):

**FIG. 18A**

Accordingly, in light of the parties' agreement over the scope and content of the prior art, the Court finds no genuine dispute of material fact with respect to the first *Graham* factor.

7

### 3.   Level of Ordinary Skill in the Art (*Graham* Factor 2)

Woss argues that a person of ordinary skill in the art would be "a person who has been involved in exercise equipment design for two to three years or more." Mot. 5, ECF 122. However, Woss cites to a now withdrawn expert report of Dr. Glen Stevick as support for that opinion. *Id*.  TRX argues that on the date of the invention of the '814 Patent, the inventor, Randy Hetrick, was "one of the only individuals with skill in the art to which the invention pertains." Opp. 6, ECF 130.  In reply, Woss argues that since the subject matter of the '814 Patent is easily understandable, a factual determination of the level of skill in the art is not necessary.  Reply 9, ECF 138.

The Court cannot determine whether TRX is arguing that the level of ordinary skill in the art is someone with Mr. Hetrick's background and experience or is simply arguing that the inventor falls within the scope of a person of ordinary skill in the art.  In this case, Mr. Hetrick was a U.S. Naval Officer and Navy SEAL for over 13 years and received a Master of Business Administration from Stanford University, and a Masters in National Security Affairs from the Naval Postgraduate School in Monterey, California.  Hetrick Decl. ¶ 3, ECF 130-2.

As to Woss's argument that a determination of the level of skill in the art is not necessary, the Federal Circuit has affirmed district court decisions where there was no factual finding as to the ordinary level of skill in the art.  *See, e.g.*, *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001).  However, in doing so, it has noted that "it is always preferable for the factfinder below to specify the level of skill it has found to apply to the invention at issue…." *Id*; *see also Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 ("Our precedent clearly establishes that the district court must make Graham findings before invalidating a patent for obviousness. ").  Accordingly, the Court will determine a level of ordinary skill in the art.  *See Link Treasure Ltd. v. Baby Trend, Inc.*, 809 F. Supp. 2d 1191, 1214 (C.D. Cal. 2011) (determining a level of ordinary skill in the art despite the fact that neither party proposed any definition).

Factors a court may consider in determining the level of ordinary skill in the art include "1) the types of problems encountered in the art; 2) the prior art solutions to those problems; 3) the rapidity with which innovations are made; 4) the sophistication of the technology; and 5) the

United States District Court
Northern District of California

educational level of active workers in the field." *West v. Jewelry Innovations, Inc.*, Case No. 07-cv-1812-JF, 2009 WL 1010848, at *5 (N.D. Cal. April 14, 2009) (quoting *Ruiz*, 234 F.3d at 666-67).  The patents at issue seek to allow individuals to perform a range of exercise at a selected resistance level ranging from nearly zero to full body weight and the ability to balance the device between configurations to provide for ease-of-use. *See, e.g.*, '896 Patent at Abstract.  The prior art solutions to this problem include variations on the strap-based fitness devices discussed.  *See, e.g.* Exh. 9 to Mot., ECF 122-13.  The '622, '814, and '896 Patents were all filed between April 9, 2003 and November 6, 2006.  However, patents cited in the prosecution history of the '814 Patent were filed at least as early as 1906. *See, e.g.* Exh. 9 to Mot. at TRX_000324, ECF 122-13 (U.S. Patent 864,188 was filed in 1906), and many of the patents contain similar elements and designs.

As to the sophistication of the technology, neither side provided any expert testimony to support its arguments.  In reviewing the patents, none of the patents contains any advanced technology and understanding them requires a basic knowledge of exercising and physics.  As a result, the Court finds that a person of ordinary skill in the art would not have an advanced degree.

In sum, the Court uses an "ordinary layman of average intelligence who is aware of the prior art—here the ['896 and '622 Patents]" as the level of skill. *Link Treasure*, 809 F. Supp. 2d at 1216.  This finding is also the most favorable to the non-moving party in this case, TRX, because "a less sophisticated person of ordinary skill is generally more favorable to a patent owner." *Id.* (citing *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984)).

### 4. Differences Between the Prior Art and the Claimed Invention (*Graham* Factor 3)

Before describing the differences between the prior art and the claimed invention the Court notes that while Woss presents invalidity arguments as to all claims of the '814 Patent, TRX only responds with arguments as to Claim 1 of the '814 Patent.  Obviousness is evaluated on a claim-by-claim basis. *Dystar Textilfarben GmbH v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006).  "[E]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; [and] dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." *Dayco*

*Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1359, 1370 (Fed. Cir. 2003) ("To be sure, it is permissible to group claims together for disposition where resolution involves the same issues of validity; however, the justification for such grouping is possible only where those issues are substantially materially identical. Where claims differ in scope in an aspect material to the analysis, those claims must be addressed individually.").

In *Shelcore, Inc. v. Durham Indus., Inc.*, 745 F.2d 621, 625 (Fed. Cir. 1984), the Federal Circuit stated:

> The district court held that, since Shelcore "has not argued the patentability of the dependent claims [2–12] separately from the independent claim [1], the dependent claims stand or fall with the independent claim." The district court erred as a matter of law in applying that otherwise valid rule in the context of determining validity of the claims of an issued patent. It was not Shelcore's burden to argue patentability. The claims were presumptively valid. It was Durham''s burden, not only to argue, but to submit evidence establishing the invalidity of each claim it asserted to be invalid…[A] party challenging the validity of a claim, absent a pretrial agreement or stipulation, must submit evidence supporting a conclusion of invalidity of each claim the challenger seeks to destroy.

*Id.* (internal citations omitted). In *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014), the Federal Circuit affirmed the district court's designation of claims as representative after concluding that all the claims were "substantially similar" and patentee did not "identi[fy] claims in its opposition brief that it believed would not be fairly represented by claim[] 1…." *Id.*

Woss spends the substantial portion of its briefing comparing Claim 1 of the '814 Patent to the prior art. Woss argues that the '814 Patent's other independent claims, Claim 6, 11, 16, 20, 24, and 25, depend on novelty for the same reason as Claim 1. Mot. 9, ECF 122; *see also* Exh. 16 to Mot., ECF 122-20. As to the dependent claims, Claims 2-5, 7-10, 12-15, 17-19, and 21-23, Woss argues that these claims add obvious limitations. *Id.* In Exhibit 16 to its Motion, Woss does an element-by-element comparison of each claim against the prior art. Exh. 16 to Mot., ECF 122-

20.  In response, TRX does not address the '814 Patent on a claim-by-claim basis but instead only discusses Woss's arguments with respect to Claim 1 and refers to the '814 Patent as a whole. Since the parties have not reached a stipulation or agreement that Claim 1 can be treated as a representative claim for purposes of invalidity, the Court analyzes the differences between the prior art and the patent on a claim by claim basis.

> a.  Claim 1

Claim 1 of the '814 Patent claims:

> 1. An exercise apparatus comprising:
>
>> an inelastic portion having at least one end including a first loop;
>>
>> a hand grip attached to said first loop; and
>>
>> a second loop attached to said hand grip, where said second loop is a continuous loop which passes through said hand grip,
>>
>> where said hand grip is integrally attached to said at least one end,
>>
>> where said second loop is integrally attached to said at least one end, and
>>
>> where said exercise apparatus is adapted to support the weight of a user of the exercise apparatus by said hand grip, said second loop, or some combination thereof.

'814 Patent at 19:5-20.

Figure 4 of the '622 Patent discloses an exercise apparatus having an inelastic portion (427) having at least one end (421) including a first loop (425) and a hand grip (423) attached to said first loop, wherein said hand grip is integrally attached to at least one end.  '622 Patent at 8:19-24; 9:49-57.  In its response to Woss's statement of undisputed facts, TRX states that it does not "dispute the general concepts" contained in the preceding sentences, but nevertheless, disputes the preceding sentence because "the '622 [P]atent does not contain the exact wording…Accordingly, TRX disputes the suggestion that Fact 1.4 reproduces the text of the '622 [P]atent verbatim."  TRX Resp. to Stmt. of Undisputed Facts ("RSUF") at Fact 1.4, ECF 130-1.

Since the prior art only needs to contain the same concepts and not the same exact wording in order to invalidate a patent, the Court takes TRX's statement that it does not dispute the general concept as an admission that the prior art contains those concepts.

The '622 Patent also discloses an exercise apparatus adapted to support the weight of a user by a hand grip, '622 Patent Figs. 15A-15I, or a second loop, '622 Patent Figs. 17A, 17B. Thus, the only elements missing from the prior art are "a second loop attached to said hand grip, where said second loop is a continuous loop which passes through said hand grip" and "where said second loop is integrally attached to said at least one end."

b. Claims 2, 3, 4, and 5

The Court addresses claims 2, 3, 4, and 5 individually but discusses them in the same section because the parties do not have any major disagreements over the differences between those claims and the prior art.

Claims 2, 3, 4, and 5 of the '814 Patent claim:

2. The apparatus of claim 1, where said hand grip includes a rigid portion.

3. The apparatus of claim 2, where said rigid portion has a length that is at least as long as a fist.

4. The apparatus of claim 3, where said rigid portion and said second loop are sized to restrain a foot.

5. The apparatus of claim 1, where said at least one end includes a first end and a second end, where said hand grip is a first hand grip and where said apparatus further includes:

a second hand grip attached to said second end.

'814 Patent at 19:21-30.

The '622 Patent discloses a hand grip including a rigid portion, '622 Patent at 4:1-3, 4:20-23; and a hand grip that includes a rigid portion that has a length at least as long as a fist, '622 Patent at Figs. 3, 15B, 15F, 15I, 16A, and 16B. TRX does not dispute these general concepts. TRX RSUF at Facts 1.8 and 1.9, ECF 130-1. Accordingly, the only difference between the prior art and dependent claims 2 and 3 are the differences noted with respect to claim 1.

The '622 Patent also discloses a hand grip that includes a rigid portion that has a length at

least as long as a fist and a second loop where the rigid portion and second loop are sized to restrain a foot.  '622 Patent at Figs. 3, 15B, 15F, 15I, 16A, 16B, 17A, and 17B.  TRX argues that the '622 Patent discloses a hand grip including a rigid portion that is less than the length of a loop. TRX RSUF at Fact. 1.11, ECF 130-1.  However, this difference is immaterial to the language in dependent claim 4 and accordingly, the only differences between the prior art and claim 4 are the differences noted with respect to claim 1.

The '622 Patent also discloses one end including a first end and a second end, where said hand grip is a first hand grip, and said apparatus further includes a second hand grip attached to said second end.  '622 Patent at Fig. 4; 8:13-24.  TRX does not dispute that the '622 Patent discloses this limitation.  TRX RSUF at Fact 1.12, ECF 130-1.  Accordingly, the only differences between the prior art and dependent claim 5 are the differences noted with respect to claim 1.

### c.   Claim 6

Claim 6 of the '814 Patent claims:

> 6. An exercise apparatus comprising:
>
> an inelastic portion having at least one end including a first loop;
>
> a hand grip attached to said first loop; and
>
> a second loop attached to said hand grip,
>
> where said second loop is a continuous loop which passes through said hand grip,
>
> where said hand grip is integrally attached to said at least one end,
>
> where said second loop is integrally attached to said hand grip, and
>
> where said exercise apparatus is adapted to support the weight of a user of the exercise apparatus by said hand grip, said second loop, or some combination thereof.

'814 Patent at 19:31-44.

The only difference between claim 6 and claim 1 is that claim 6 requires the second loop to be integrally attached to the hand grip while claim 1 requires the second loop to be integrally attached to at least one end.  The prior art does not disclose where said second loop is integrally

13

attached to said second hand grip.  Thus, the differences between the prior art and claim 6 are the same as those discussed with respect to claim 1 with the addition of second loop that is integrally attached to said second hand grip.

### d.   Claims 7, 8, 9 and 10

Dependent claims 7 through 10 add the same exact limitations to independent claim 6, as dependent claims 2 through 5 did to independent claim 1.  Accordingly, as described with respect to dependent claims 2 through 5, the only differences between the prior art and dependent claims 7 through 10 are the differences noted with respect to claim 6.

### e.   Claim 11

Claim 11 of the '814 Patent claims:

> 11. An exercise apparatus comprising:
>
>> an inelastic portion having at least one end including a first loop;
>>
>> a hand grip attached to said first loop; and
>>
>> a second loop attached to said hand grip,
>>
>> where said second loop is a continuous loop which passes through said hand grip,
>>
>> where said hand grip is integrally attached to said at least one end,
>>
>> where said exercise apparatus is adapted to support the weight of a user of the exercise apparatus by said hand grip, said second loop, or some combination thereof.

'814 Patent at 19:56-67.

Claim 11 is similar to claim 1, except it removes the "where said second loop is integrally attached to said hand grip, and" limitation of claim 1.  As a result, the differences between claim 11 and the prior art are the same as claim 1 and the prior art.

### f.   Claims 12, 13, 14 and 15

Dependent claims 12 through 15 add the same exact limitations to independent claim 11, as dependent claims 2 through 5 did to independent claim 1.  Accordingly, as described with respect to dependent claims 2 through 5, the only differences between the prior art and dependent

United States District Court
Northern District of California

1    claims 12 through 15 are the differences noted with respect to claim 11.

2                           g.   Claim 16

3    Claim 16 of the '814 Patent claims:

4            16. An exercise apparatus comprising:

5                    an inelastic portion having a first end and a second end;

6                    a first hand grip attached to said first end;

7                    a first loop attached to said first end;

8                    a second hand grip attached to said second end; and

9                    a second loop attached to said second end,

10                   where said first loop is separate from said inelastic portion
                     and is a continuous loop of fixed length through said first
11                   hand grip,

12                   where said second loop is separate from said inelastic portion
                     and is a continuous loop through said second hand grip,
13

14                   where said first hand grip is integrally attached to said first
                     end, and where said second hand grip is integrally attached
15                   to said second end,

16                   where said first loop is integrally attached to said first end,
                     and

17                   where said exercise apparatus is adapted to support the
                     weight of a user of the exercise apparatus by said hand grips,
18                   said loops, or some combination thereof.

19   '814 Patent at 20:11-30.

20           Figure 4 of the '622 Patent discloses an inelastic portion 429 having a first end 427a and a

21   second end 427b and a first hand grip 423a attached to said first end 427a.  The prior art does not

22   disclose a first loop attached to said first end as this refers to a continuous foot loop through the

23   hand grip which other claims refer to as a second loop.  Figure 4 of the '622 Patent also discloses a

24   second hand grip 423b attached to second end 427b.  The prior art does not disclose a second loop

25   attached to a second end.  The prior art does not disclose where said first loop is separate from said

26   inelastic portion and is a continuous loop of fixed length through said first hand grip, and where

27   said second loop is separate from said inelastic portion and is a continuous loop through said

28   second hand grip.  Figure 4 of the '622 Patent discloses an integrally attached hand grip 423a to

United States District Court
Northern District of California

15

the first end 427a, and an integrally attached second hand grip 423b to a second end 427b.  The prior art does not disclose where the first loop is integrally attached to the first end.  The '622 Patent also discloses an exercise apparatus adapted to support the weight of a user by a hand grip, '622 Patent Figs. 15A-15I, or a second loop, '622 Patent Figs. 17A, 17B.

Thus, the prior art does not contain "a first loop attached to said first end," "a second loop attached to said second end," "where said first loop is separate from said inelastic portion and is a continuous loop of fixed length through said first hand grip," "where said second loop is separate from said inelastic portion and is a continuous loop through said second hand grip," and "where said first loop is integrally attached to said first end."

### h.  Claims 17 and 18

Claims 17 and 18 of the '814 Patent claim:

> 17. The apparatus of claim 16, where said first hand grip includes a first rigid portion and where said second hand grip includes a second rigid portion.

> 18. The apparatus of claim 17, where said first rigid portion and said second rigid portion both have a length that is at least as long as a fist.

'814 Patent at 20:31-37.

Figure 4 of the '622 Patent discloses a first hand grip including a first rigid portion (423a) and a second hand grip including a second rigid portion (423b).  The '622 Patent also discloses a first rigid portion and a second rigid portion both having a length that it is at least as long as a fist. '622 Patent at Figs. 3, 15B, 15F, 15I, 16A, 16B, 17A, and 17B.  Accordingly, the only difference between the prior art and dependent claims 17 and 18 are the differences noted with respect to claim 16.

### i.  Claim 19

Claim 19 of the '814 Patent claim:

> 19. The apparatus of claim 18, where said first rigid portion and said first loop are sized to restrain a foot, and where said second rigid portion and said second loop are sized to restrain a foot.

'814 Patent at 20:38-41.

The '622 Patent discloses a second loop sized to restrain a foot, 622 Patent at Figs. 3, 15B,

15F, 15I, 16A, 16B, 17A, and 17B, but the loop is not integrally attached.  Accordingly, the only difference between the prior art and dependent claim 19 are the differences noted with respect to claim 16.

         j.   Claim 20

Claim 20 of the '814 Patent claims:

> 20. An exercise apparatus comprising:
>
> > an inelastic portion having a first end and a second end;
> >
> > a first hand grip attached to said first end;
> >
> > a first loop attached to said first end;
> >
> > a second hand grip attached to said second end; and
> >
> > a second loop attached to said second end,
> >
> > where said first loop is separate from said inelastic portion and is a continuous loop of fixed length through said first hand grip,
> >
> > where said second loop is separate from said inelastic portion and is a continuous loop through said second hand grip,
> >
> > where said first hand grip is integrally attached to said first end, and where said second hand grip is integrally attached to said second end,
> >
> > where said first loop is integrally attached to said first hand grip, and
> >
> > where said exercise apparatus is adapted to support the weight of a user of the exercise apparatus by said hand grips, said loops, or some combination thereof.

'814 Patent at 20:11-30.

      The only difference between claim 20 and claim 16 is that claim 20 requires the first loop to be integrally attached to said first hand grip while claim 16 requires first loop to be integrally attached to said first end.  The prior art does not disclose where the first loop is integrally attached to said first hand grip.  Thus, the differences between the prior art and claim 20 are the same as those discussed with respect to claim 16 but the prior art does not disclose where the first loop is integrally attached to said first hand grip.

         k.   Claims 21, 22, and 23

United States District Court
Northern District of California

Dependent claims 21 through 23 add the same exact limitations to independent claim 20, as dependent claims 17, 18, and 19 did to independent claim 16.  Accordingly, as described with respect to dependent claims 17, 18, and 19, the only difference between the prior art and dependent claims 21, 22, and 23 are the differences noted with respect to claim 20.

l.   Claims 24 and 25

Claims 24 and 25 of the '814 Patent claims:

24. An exercise apparatus comprising:

an inelastic portion having a first end and a second end;

a first hand grip attached to said first end;

a first loop attached to said first end;

a second hand grip attached to said second end; and

a second loop attached to said second end,

where said first loop is separate from said inelastic portion and is a continuous loop of fixed length through said first hand grip,

where said second loop is separate from said inelastic portion and is a continuous loop through said second hand grip,

where said first hand grip is integrally attached to said first end, and where said second hand grip is integrally attached to said second end,

where said second loop is integrally attached to said second end, and

where said exercise apparatus is adapted to support the weight of a user of the exercise apparatus by said hand grips, said loops, or some combination thereof.

'814 Patent at 21:5-25.

25. An exercise apparatus comprising:

an inelastic portion having a first end and a second end;

a first hand grip attached to said first end;

a first loop attached to said first end;

a second hand grip attached to said second end; and

a second loop attached to said second end,

18

1

2

> where said first loop is separate from said inelastic portion and is a continuous loop of fixed length through said first hand grip,

3

4

> where said second loop is separate from said inelastic portion and is a continuous loop through said second hand grip,

5

6

> where said first hand grip is integrally attached to said first end, and where said second hand grip is integrally attached to said second end,

7

> where said second loop is integrally attached to said second hand grip, and

8

9

> where said exercise apparatus is adapted to support the weight of a user of the exercise apparatus by said hand grips, said loops, or some combination thereof.

10 '814 Patent at 22:1-23.

11       Claims 24 and 25 are similar to claims 16 and 20 except in claims 24 and 25, the second to

12 last clause refers to how the second loop is integrally attached, while in claims 16 and 20, the

13 second to last clause refers to the first loop.  As with claims 16 and 20, the prior art also does not

14 disclose where the second loop is integrally attached either to the second end or the second hand

15 grip.  Accordingly, the differences between the prior art and claims 24 and 25 are the same as the

16 differences between the prior art and claims 16 and 20.

17              **5.  A *Prima Facie* Case of Obviousness Has Been Established**

18       Before discussing whether Woss has established a *prima facie* case of obviousness, the

19 Court addresses whether it is appropriate to use a representative claim in this case.  The Court's

20 claim-by-claim comparison of the prior art to the patent reveals that the fundamental difference

21 between the '814 Patent and the prior art is "a second loop attached to said hand grip, where said

22 second loop is a continuous loop which passes through said hand grip."  The above analysis

23 reveals that all the claims of the '814 Patent are substantially similar and would lend themselves to

24 an obviousness analysis based on a representative claim.  This conclusion is further supported by

25 the TRX's arguments in opposition, where TRX only presented arguments with respect to claim 1

26 of the '814 Patent and did not identify any claims that it did not believe would be fairly

27 represented by claim 1.  Accordingly, the Court concludes that claim 1 may be used a

28 representative claim for purposes of obviousness.  *See Content Extraction*, 776 F.3d at 1348 (Fed.

United States District Court
Northern District of California

1    Cir. 2014) (affirming district court's designation of claims as representative after concluding that

2    all the claims were "substantially similar" and patentee did not "identi[fy] claims in its opposition

3    brief that it believed would not be fairly represented by claim[] 1[.]").

4           Upon reviewing the record, the Court finds that a person of ordinary skill in the art at the

5    time of the '814 Patent invention would have reviewed the '622 Patent and '896 Patent.  The '896

6    Patent teaches that a hand grip can be formed with a loop passing through the grip.  '896 Patent at

7    Fig. 4 (421a, 425a).



FIG._4

17          The '896 Patent also indicates that this method integrally attaches the hand grip.  *Id*.  The

18   '896 Patent does not teach anything about foot grips or second loops.  However, the '622 Patent

19   teaches that a second loop and grip can be added to the device of the '896 Patent.  '622 Patent at

20   Figs. 17A, 17B, 18.



FIG. 17A          FIG. 17B

United States District Court
Northern District of California

1    The '622 Patent does not teach integrally attaching the second loop and grip to the exercise

2    device, rather it teaches a removable method "to provide[] for a greater number of possible

3    exercise."  '622 Patent at Abstract.

4    There are reasons why a person of ordinary skill in the art would want to improve on the

5    '622 Patent.  For example, the '622 Patent allows a user to attach an additional foot loop to the

6    hand grip using velcro.  '622 Patent at Fig. 18A.  Users may not want to remove the foot loop

7    when performing exercises using their hands but at the same time, may not like the feeling of

8    putting their hands over the velcro connecting the foot loop to the hand grip.  *See, e.g.*, Hetrick

9    Decl. to Opp. ¶ 12, ECF 130-2.  Other users may value a permanently fixed foot loop over a

10   removable foot loop which may be misplaced or lost.  *Id.*   As a result, there was reason for the

11   inventor of the '622 Patent to improve his design.  "When there is a design need or market

12   pressure to solve a problem and there are a finite number of identified, predictable solutions, a

13   person of ordinary skill has good reason to pursue the known options within his or her technical

14   grasp."  *KSR Int'l*, 550 U.S. at 420.  Here, the '896 Patent directly taught an integrally attached

15   loop created by passing the loop through a grip.  The prior art thus directly taught the creation of

16   an integrally attached loop by passing the loop through a grip.  The addition of a second loop,

17   which passed through the grip, combines simple elements disclosed in prior patents.  *Ball Aerosol*

18   *& Specialty Container, Inc. v. Ltd. Brands, Inc*, 555 F.3d 984, 993 (noting that the obviousness

19   inquiry must take account of the "routine steps" that a person of ordinary skill in the art would

20   employ).  There is also no evidence that the prior art teaches away from the addition of a second

21   loop passing through the grip.  The Court finds that to a person of ordinary of skill in the art with

22   knowledge of the prior art described here, the addition of a second integrally attached loop would

23   have been obvious.  *KSR Int'l*, 550 U.S. at 420. ("Common sense teaches, however, that familiar

24   items may have obvious uses beyond their primary purposes, and in many cases a person of

25   ordinary skill will be able to fit the teachings of multiple patents together like pieces of a

26   puzzle.").

27   TRX argues that Woss has not demonstrated the '814 Patent is obvious because it has not

28   introduced testimony from anyone with ordinary skill in the art, it has not addressed any

United States District Court
Northern District of California

secondary considerations of obviousness, that the '814 Patent was not obvious to its inventor, and that the patent office considered the '622 and '896 Patents during the prosecution of the '814 Patent.  Opp. 5-11, ECF 130.  First, testimony from an expert is not required where the technology is easily understandable.  *Perfect Web Techs. v. Infousa, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009) (finding of obviousness "may include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference or expert opinion"); *see also Kroy IP Holdings, LLC v. Safeway, Inc.*, 107 F. Supp. 3d 656, 659 (E.D. Tex. May 29, 2015) (Bryson, J., sitting by designation) (expert testimony not required where the patent "does not involve technology of any significant complexity" and "requires no more than an educated layperson's knowledge of computers to comprehend.").

Second, it is not Woss's burden to address secondary considerations of obviousness.  These considerations may rebut a *prima facie* case of obviousness but only if the patent holder puts forth sufficient evidence and shows a nexus between the secondary considerations and the patent.  As explained in the next section, TRX has not done so.

Third, while the '814 Patent may not have been obvious to its inventor, the subjective experience of an inventor has little relevance to the obviousness inquiry.  *See, e.g., Ryko Mfg. Co. v. Nu–Star, Inc.*, 950 F.2d 714, 718 (Fed. Cir. 1991) (test is not subjective obviousness to the inventor, but is objective obviousness to the artisan).

Fourth, the fact that the Patent Office considered the '896 and '622 Patents before issuing the '814 Patent is not dispositive to the obviousness inquiry.  While prior art considered by the Patent Office may be afforded less weight, patents may still be invalidated by prior art considered by the Patent Office.  For example, in *PharmaStem Therapeutics*, PharmaStem argued that the jury's verdict of nonobviousness was supported by the decision of the Patent Office to issue the patents-in-suit over the same references that defendants cited at trial.  491 F.3d at 1366.  The Federal Circuit analyzed these references, found that there was "clear and convincing evidence that the asserted claims of the [patents-in-suit] would have been obvious and that it was unreasonable for the jury to reach the opposite conclusion," and reversed the district court's denial of judgment as a matter of law.  Here, the Court has carefully considered the '896 and '622 Patents

1    and finds that they present a *prima facie* case of obviousness.

2         Therefore, the combination of the '896 and '622 Patents disclose the missing elements in

3    the claims of the '814 Patent. *See, e.g. W. Union Co. v. MoneyGram Payment Sys.*, Inc., 626 F.3d

4    1361, 1372 (Fed.Cir.2010) (concluding that the asserted dependent claims, which "add[ed] only

5    trivial improvements that would have been a matter of common sense to one of ordinary skill in

6    the art," were obvious as a matter of law).

7              **6.   Secondary Considerations of Non-Obviousness (*Graham* Factor 4)**

8         If a prima facie case of obviousness has been established, the burden then shifts to the

9    patent holder to present evidence of secondary considerations of non-obviousness to overcome

10   this prima facie showing. *See, e.g., In re Huang*, 100 F.3d 135, 139 (Fed.Cir. 1996). Secondary

11   considerations can include, among other things, evidence of commercial success, long-felt but

12   unsolved needs, and/or the failure of others. *See Graham*, 383 U.S. at 17-18.

13        TRX argues that there are multiple secondary considerations of nonobviousness that rebut

14   any prima facie case of obviousness. First, TRX argues there is evidence of commercial success

15   because in 2007, the first full year of sales to utilize the '814 Patent invention, its revenues were

16   $3.60 million, while the year before, its revenues were $0.62 million. Opp. 8, ECF 130 (citing

17   Hetrick Decl. at ¶¶ 17, ECF 130-2). In 2008, TRX says its revenues nearly doubled again to $6.74

18   million. *Id*. Second, TRX argues the '814 Patent solved numerous problems and user needs.

19   Opp. 8, ECF 130. According to TRX, it received a number of comments from users about an

20   alternative foot cradle design. *Id*. (citing Hetrick Decl. at ¶ 10, ECF 130-2). Third, TRX argues

21   that the sophistication of the technology and rapidity with which innovations occur support a

22   finding of non-obviousness. Opp. 10, ECF 130. According to TRX, at the time of the invention,

23   it had no competition in the sale of strap-based exercise equipment. *Id*. TRX claims the lack of

24   competition indicates that innovation in this field happened slowly. *Id*. TRX argues that once Mr.

25   Hetrick began to innovate, the speed of innovation correlated directly to the speed at which Mr.

26   Hetrick could innovate. *Id*. In response, Woss argues TRX has not supported its secondary

27   considerations of non-obviousness with evidence. Reply 10, ECF 138.

28        The Court agrees with Woss. TRX's only evidence in support of secondary considerations

United States District Court
Northern District of California

is the testimony of the inventor of the '814 Patent. Subjective evidence of obviousness from the point of view of the inventor is not evidence of nonobviousness sufficient to create a genuine dispute. *See, e.g., Ryko*, 950 F.2d at 718; *Celanese Corp. v. BP Chem. Ltd.*, 846 F.Supp. 542, 547 (S.D.Tex.1994) ("evidence of the patent's 'subjective obviousness' to the inventor…is direct evidence of nothing."). As a result, Mr. Hetrick's declaration is simply subjective evidence that has no relevance to objective indicia of non-obviousness. As to the sales figures, TRX does not break down these sales figures by device and more importantly, TRX does not reveal its marketing and expenses or its profits. TRX may have doubled its advertising budget leading to increased sales or sold greater quantities of other devices not utilizing this feature. As a result, TRX's sales figures have no evidentiary nexus to the '814 Patent. *See, e.g. MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1336 (Fed. Cir. 2014) ("Merely stating—with no supporting figures or data—that the V3 was more successful than the V2 is insufficient on its own to establish that the V3 has been a 'commercial success' and that its success was attributable to the claimed design features.").

### 7.   The '814 Patent Is Invalid

Woss has established a *prima facie* case of obviousness as to all claims of the '814 Patent and TRX has not submitted sufficient evidence to support triable issues of fact to rebut that case through secondary considerations of non-obviousness. Accordingly, in considering the *Graham* factors, the Court finds there is clear and convincing evidence that the '814 Patent is invalid as being obvious in light of the '622 Patent as modified by the '896 Patent.

### B.   Non-Infringement of the '814 Patent

Since the '814 Patent is invalid, Woss's motion for summary judgment of non-infringement of the '814 Patent is DENIED AS MOOT.

### C.   The '896 Patent – Claims 1, 12, and 21

Woss argues the accused products do not infringe the '896 Patent because the accused products do not contain limitations present in independent claims 1, 12, and 21. Mot. 14-15, ECF 122. In opposition, TRX argues that the accused products infringe at least claim 1 of the '896 Patent. Opp. 17, ECF 17.

United States District Court
Northern District of California

1

2    ### 1.  Legal Standard

3           "Determining literal infringement is a two step process: the 'proper construction of the

4    asserted claim and a determination whether the claim as properly construed reads on the accused

5    product or method.'"  *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1319

6    (Fed. Cir. 2012) (quoting *Georgia–Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1330 (Fed.

7    Cir. 1999)).  "To establish literal infringement every limitation set forth in a claim must be found

8    in an accused product, exactly.'"  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575

9    (Fed. Cir. 1995).  "If any claim limitation is absent from the accused device, there is no literal

10   infringement as a matter of law."  *Cephalon, Inc. v. Watson Pharms. Inc.*, 707 F.3d 1330, 1340

11   (Fed. Cir. 2013).  "It is axiomatic that '[t]here can be no inducement or contributory infringement

12   without an underlying act of direct infringement.'"  *In re Bill of Lading Transmission and*

13   *Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (quoting *Linear Tech. Corp. v.*

14   *Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)).

15          "In order to prove direct infringement, a patentee must either point to specific instances of

16   direct infringement or show that the accused device necessarily infringes the patent in suit."

17   *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).  "Direct

18   infringement can be proven by circumstantial evidence."  *Vita–Mix Corp. v. Basic Holding, Inc.*,

19   581 F.3d 1317, 1326 (Fed. Cir. 2009).  "Circumstantial evidence must show that at least one

20   person directly infringed an asserted claim during the relevant time period."  *Toshiba Corp. v.*

21   *Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012) (citing *Lucent Techs., Inc. v. Gateway, Inc.*,

22   580 F.3d 1301, 1317 (Fed. Cir. 2009)) ("[A] finding of infringement can rest on as little as one

23   instance of the claimed method being performed during the pertinent time period.").

24          As to non-infringement at summary judgment, where, as here, the party moving for

25   summary judgment would not bear the burden of proof at trial, the movants' initial burden at

26   summary judgment is to demonstrate or point out a lack of evidence to support at least one

27   material element of the opposing party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

28   (1986).  The burden thus shifts to the non-movant to adduce sufficient evidence to raise a genuine

United States District Court
Northern District of California

1    issue of material fact on this disputed element at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

2    242, 250 (1986).

3                    **2.  Discussion**

4            Woss argues that claims 1, 12, and 21 of the '896 Patent are not infringed because its

5    products have a rigid metal ring and not a flexible loop.  Mot. 15, ECF 122.  TRX argues that

6    claim 1 of the '896 Patent does not require a flexible loop but rather states that there is "a flexible

7    portion that includes a loop."  Opp. 17, ECF 130.  TRX claims this allows the anchor to be flexible

8    and the loop to be rigid.  *Id.*  TRX notes that if the patentee wanted a flexible loop, he could have

9    done so as claims 12 and 21 specify.  *Id.* at 18.

10           As an initial matter, TRX made no argument in opposition to Woss's motion for summary

11   judgment as to non-infringement of claims 12 and 21 of the '896 Patent.  The Court finds that

12   Woss has met its burden of coming forward with evidence of non-infringement of Claims 12 and

13   21 and TRX concedes that claims 12 and 21 were not infringed for two reasons:  first, TRX

14   submitted no evidence or argument in opposition to Woss's arguments, and second, by contrasting

15   claim 1 against claims 12 and 21, it argued that claims 12 and 21 required a flexible loop, which

16   the accused products do not have.  As a result, the Court GRANTS summary judgment as to non-

17   infringement of claims 12 and 21 of the '896 Patent.

18           As to claim 1, the parties focus on the following limitation, in relevant part: "an anchor

19   having…a flexible portion…[that] includes a loop…[through which] an elongated member

20   passes[.]"  Opp. 17, ECF 130.  The key dispute between the parties is whether or not claim 1

21   requires the loop to be flexible.  The Court finds claim 1 does not require the loop to be flexible

22   because in claim 21, the patentee used the term "flexible loop" to claim, in part, "an anchor

23   having…a flexible loop…[through which] an elongated member passes[.]"  "Different claim terms

24   are presumed to have different meanings."  *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326,

25   1333 (Fed. Cir. 2014) (quoting *Helmsderfer v. Bobrick Washroom Equip. Inc.*, 527 F.3d 1379,

26   1382 (Fed Cir. 2008)).  The patentee clearly knew how to claim a flexible loop but chose to use a

27   different claim term in claim 1.  As a result, these two terms should have different meanings.

28           Woss's arguments in opposition are unavailing.  Although Woss does not directly address

United States District Court
Northern District of California

26

the issue posed by its theory of non-infringement of having different terms in the patent mean the same thing, Woss argues that TRX made statements during the prosecution of the '896 Patent distinguishing it from the prior art on the basis that an elongated member passes through a rigid, not flexible support member.  Reply 10-12, ECF 138.  Woss misconstrues the statements made by TRX during prosecution.  TRX distinguished prior art on the basis that the prior art did not disclose "a flexible portion for supporting an elongated member…"  Exh. 11 to Mot. at TRX_000089, ECF 122-15.  Woss interprets this statement as disclaiming the use of a rigid loop. But this statement, as claim 1, specifically says, a flexible portion, but does not impose any requirements on whether the loop must be flexible.  This is further confirmed by the patent examiner's statement of reasons for allowing the '814 Patent: "the prior art does not disclose an exercise device as claimed wherein the elongate[d] member is a flat strap that is passed through the loop of a flexible portion of the anchor."  Exh. 11 to Mot. at TRX_00062, ECF 122-15.  This statement indicates that the distinguishing feature of the '814 Patent is not a "flexible loop" but rather a "flexible portion of the anchor," which has a loop that the elongated members passes through.  Thus, Woss has not shown the patentee disclaimed any use of a non-flexible loop during prosecution.

Therefore, the term "flexible loop" in claim 12 cannot have the same meaning as the patent's use of a "flexible portion…[that] includes a loop" in claim 1.  Since claim 1 does not require the loop to be flexible, Woss's non-infringement argument predicated on the existence of a rigid loop fails and the Court DENIES Woss's motion for summary judgment of non-infringement of the '896 Patent.

### D.   The '197 Patent is Not Infringed

Woss argues that independent claims 1 and 8 of the '197 Patent are not infringed because its products do not have a "second portion [that] includes a loop of flexible material."  Mot. 17-18, ECF 122.  According to Woss, all of its products have a loop of rigid material as depicted below. *Id*. at 18-19.

1
2
3
4
5
6
7
8
9



10    TRX argues that the accused products are sold unassembled and with multiple anchoring

11   mechanisms.  Opp. 20, ECF 130.  According to TRX, some of these mechanisms infringe the '197

12   Patent.  *Id*. at 20-22.  TRX also notes that an image in one of Woss's manuals appears to depict an

13   individual using Woss's product in an infringing manner.  *Id*.  at 23.

14    The Court finds that Woss does not infringe the asserted claims of the '197 Patent.  TRX's

15   entire argument in opposition rests on its belief that customers may assemble Woss's product in an

16   infringing manner.  But its belief that this may happen is not enough to raise a genuine issue of

17   material of fact.  "Circumstantial evidence must show that at least one person directly infringed an

18   asserted claim during the relevant time period."  *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358,

19   1364 (Fed. Cir. 2012) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir.

20   2009)).   Evidence that it is "recommended that customers use the infringing mode…[is] evidence

21   [that] goes beyond showing that the accused [products] are 'capable of' infringing; the evidence is

22   sufficient to create a genuine issue of material fact, thus precluding summary judgment"  *Id*. at

23   1365.  Here, the only evidence TRX has presented is one picture from a Woss manual. However,

24   contrary to TRX's assertions, it is impossible to tell how the individual in that picture configured

25   Woss's product and no reasonable jury could make that determination.  As a result, TRX has

26   presented no evidence, other than attorney speculation, that an individual could assemble Woss's

27   products in an infringing way.  Without any evidence, circumstantial or direct, TRX has not

28   created a genuine issue of material fact and the Court GRANTS Woss's motion for summary

judgment for non-infringement of the '197 Patent.

## IV.   TRX'S MOTIONS FOR PRELIMINARY INJUNCTION AND PARTIAL SUMMARY JUDGMENT

TRX's motion for partial summary judgment was limited to its claim that Woss's SST Suspension Trainer infringes the '814 Patent.  In light of the Court's ruling on Woss's motion for summary judgment the Court DENIES TRX's motion for summary judgment that Woss infringes the '814 Patent.

TRX also moves for a preliminary injunction enjoining WOSS from selling or offering for sale the following products within the United States: "3000 Equalizer," "3000 Stable," "Military Gym Style," "Military 1 in Trainer," "Military 1.5 in Trainer," "SST Suspension Trainer," "Titan 1½ in Wide Strap," and "WOSS XT."  Mot. 1, ECF 115-1.  TRX argues Woss is violating its patents and trademarks.

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Id.* at 20.  Alternatively, an injunction can issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," provided that the plaintiff can also demonstrate the other *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation marks omitted).  Under either standard, the plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy.  *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

Although TRX is asserting three patents in this lawsuit, its motion for preliminary injunction only addresses its likelihood of success on the merits as the '896 Patent.  As to the trademark infringement claim, TRX has registered trademarks in "SUSPENSION TRAINING"

United States District Court
Northern District of California

29

1   AND "FITNESS ANYWHERE."  Mot. 15, ECF 115-1.  TRX argues that Woss is using the marks

2   "SUSPENSION TRAINER" and "SUSPENSION FITNESS" leading to consumer confusion.  *Id.*

3   Woss argues that TRX is not likely to succeed on its trademark claim because its marks are

4   generic and TRX is speculating about consumer confusion and has not offered any evidence.  Opp.

5   18-19, ECF 114.  The Court need not delve into whether TRX has shown a likelihood of success

6   on the merits on its patent and trademark claims because TRX has not shown a likelihood of

7   irreparable harm.

8        TRX argues that it suffers irreparable harm for two reasons: first, because it has to compete

9   directly against a competitor infringing its intellectual property, and second, because Woss may

10  not have the ability to satisfy any potential monetary judgment.  Mot. 16-17, ECF 115-1.  As far as

11  TRX's first argument, TRX filed this lawsuit in 2014, ECF 1, but did not file this motion for

12  preliminary injunction until 2016, ECF 110.  Moreover, TRX states that Woss began "to

13  manufacture an alternative product line that directly competes with equipment sold by TRX" in

14  2011.  Mot. 5, ECF 115-1.  TRX's five year delay in bringing this motion since Woss began

15  making competing products, and almost two year delay in bringing this motion since filing suit,

16  undermines TRX's argument that it faces irreparable harm by having to compete against Woss.

17       In fact, TRX explains that the impetus for filing a preliminary injunction motion at this

18  time was a recent ruling in a separate case finding that this lawsuit is not covered by Woss's

19  insurance policies and Woss's inability to satisfy a monetary judgment.  Mot. 6-8, ECF 115-1.

20  However, TRX's belief that Woss cannot pay any judgment is unfounded and relies on

21  mischaracterizations of deposition testimony by Woss's co-founder.

22       According to TRX, Woss's testified at his deposition that Woss would not be able to

23  satisfy a million dollar judgment, that Woss does not have $300,000 in the bank, and that he was

24  not sure if Woss could pay a $59,000 sanctions award.  Mot. 7, ECF 115-1.  There are multiple

25  problems with the conclusions TRX attempts to draw from these answers.  First, Woss was asked

26  questions regarding its ability to pay a judgment that have no connection to what TRX could

27  reasonably expect to receive in this case if it prevailed.  Here, Woss's financial statements show

28  that its net income was ███████ for 2011, ███████ for 2012, ███████ for 2013, and

United States District Court
Northern District of California

1        ██████████ for 2014.  Exh. 14 to Exh. G to Villeneuve Decl., ECF 115-2.  TRX has offered no

2 explanation or evidence regarding what it believes the damages award would be in this case.  But

3 based on the evidence presented to the Court, TRX's questions are completely unrelated to the

4 value of this lawsuit.  Second, TRX's questions about Woss's ability to pay a sanctions award are

5 of little relevance because Woss did in fact pay the sanctions rendered in this case.  Opp. 23, ECF

6 114.  In any event, without TRX reasonably quantifying the monetary judgment it expects to

7 receive, it is pure speculation as to whether Woss could satisfy it.  As a result, TRX has not

8 presented evidence of likelihood of irreparable harm and the Court DENIES TRX's motion for a

9 preliminary injunction.

10 **V.**   **ORDER**

11        For the foregoing reasons, IT IS HEREBY ORDERED that:

12        1.    Woss's motion for summary judgment that the '814 Patent is invalid is

13               GRANTED.  Woss's motion for summary judgment of non-infringement of the

14               '814 Patent is DENIED AS MOOT.  Woss's motion for summary judgment of non-

15               infringement of the '896 Patent is GRANTED IN PART AND DENIED IN PART.

16               Woss's motion for summary judgment of non-infringement of the '197 Patent is

17               GRANTED.

18        2.    TRX's motion for summary judgment is DENIED.

19        3.    TRX's motion for preliminary injunction is DENIED.

20        **IT IS SO ORDERED.**

21 Dated: August 23, 2016

22                          *Beth Labson Freeman*

23                         BETH LABSON FREEMAN
                          United States District Judge

24

25

26

27

28

United States District Court
Northern District of California