VEDDER PRICE (CA), LLP
Heather M. Sager, Bar No. 186566
hsager@vedderprice.com
275 Battery Street, Suite 2464
San Francisco, California 94111
T: +1 (415) 749 9500
F: +1 (415) 749 9502

VEDDER PRICE P.C.
Alain Villeneuve (admitted *pro hac vice*)
avilleneuve@vedderprice.com
Michael J. Waters (admitted *pro hac vice*)
mwaters@vedderprice.com
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601-1003
T: +1 (312) 609-7500
F: +1 (312) 609-5005

Attorneys for Plaintiff
FITNESS ANYWHERE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITNESS ANYWHERE LLC, | Case No. 5:14-cv-01725 BLF |
| Plaintiff, | **FITNESS ANYWHERE LLC'S TRIAL BRIEF** |
| v. | |
| WOSS ENTERPRISES LLC., | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I.      WOSS'S PATENT INFRINGEMENT ................................................................. 1

    a.      The '896 Patent ................................................................. 1
    b.      The Accused Products ................................................................. 1
    c.      Direct Patent Infringement ................................................................. 2
    d.      Indirect Patent Infringement ................................................................. 4
    e.      WOSS's Infringement Is Willful ................................................................. 4
    f.      WOSS's Affirmative Defenses ................................................................. 5

II.     WOSS'S TRADEMARK INFRINGEMENT ......................................................... 6

    a.      The TRX Trademarks ................................................................. 6
    b.      WOSS's Infringement ................................................................. 7
    c.      Validity of the TRX Marks ................................................................. 8
    d.      WOSS's Defenses ................................................................. 9
    e.      WOSS's Intentional Trademark Infringement ................................................................. 10

III.    WOSS'S UNFAIR COMPETITION ................................................................. 10

    a.      Federal Unfair Competition ................................................................. 11
    b.      California Unfair Competition ................................................................. 12

IV.     WOSS'S TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC
    RELATIONSHIPS ................................................................. 13

V.      DAMAGES ................................................................. 14

VI.     ISSUES TO BE DECIDED BY THE COURT ................................................................. 14

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Am. Honda Motor Co. v. Two Wheel Corp.*,
  918 F.2d 1060 (2d Cir. 1990)................................................................14

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341, 204 U.S.P.Q. 808 (9th Cir. 1979) .................................10

*Brookfield Commc'ns Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999).............................................................11

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002)................................................................9

*Classic Media, Inc. v. Mewborn*,
  532 F.3d 978 (9th Cir. 2008)...............................................................11

*Coca-Cola Co. v. Overland, Inc.*,
  692 F.2d 1250 (9th Cir. 1982)................................................................8

*Dreamwerks Prod. Grp. v. SKG Studio*,
  142 F.3d 1127 (9th Cir. 1998)................................................................7

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006)..............................................................................15

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002)................................................................................3

*Freecycle Network, Inc. v. Oey*,
  505 F.3d 898 (9th Cir. 2007)...............................................................11

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016)............................................................................5

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
  49 F.3d 1551 (Fed. Cir. 1995)................................................................4

*K.P. Permanent Make-Up Inc. v. Lasting Impression I, Inc.*,
  408 F.3d 596 (9th Cir. 2005)..................................................................8

*Kwikset Corp. v. Superior Court*,
  51 Cal.4th 310 (2011)...........................................................................12

*Lindy Pen Co. v. Bic Pen Corp.*,
  725 F.2d 1240 (9th Cir. 1984)................................................................9

*Lozano v. AT & T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007)................................................................12

*New West Corp. v. NYM Co. of California Inc.*,
  595 F.2d 1194 (9th Cir. 1979)..............................................................11

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,
  745 F.2d 11 (Fed. Cir. 1984)..................................................................4

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
  469 U.S. 189 (1985).................................................................................8

*Playboy Enters. v. Netscape Commc'ns Corp.*,
  354 F.3d 1020 (9th Cir. 2004)..............................................................10

*PMC, Inc. v. Saban Entm't, Inc.*,
  45 Cal.App.4th 579 (Cal. App. 1996).............................................13, 15

*San Jose Constr., Inc. v. S.B.C.C., Inc.*,
  155 Cal.App.4th 1528 (Cal. App. 2007)...............................................13

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013)..............................................................12

*Skydive Arizona, Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012)..............................................................11

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
  911 F.2d 363 (9th Cir. 1990)..................................................................9

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)..............................................................2

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997)..................................................................................4

*Youst v. Longo*,
  43 Cal.3d 64 (1987)..............................................................................13

**Statutes**

15 U.S.C. § 1117(b) .................................................................................10

15 U.S.C. § 1125(a) .................................................................................11

15 U.S.C. § 1125(a)(1) .............................................................................11

15 U.S.C. § 1125(a)(1)(A) ........................................................................11

15 U.S.C. § 1125(a)(1)(B) ..................................................................11, 12

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

FITNESS ANYWHERE LLC'S TRIAL BRIEF
5:14-CV-01725 BLF

35 U.S.C. § 284 ........................................................................................................5

California Business and Professions Code § 17200 .......................................11, 12

California Business and Professions Code § 17500 .............................................12

California Business and Professions Code § 17501 .............................................13

California Business and Professions Code § 17533.7 ..........................................12

Lanham Act ..........................................................................................................12

Lanham Act Section 43(a) ...................................................................................11

Lanham Act Section 43(a)(1) ..............................................................................11

Lanham Act Section 43(a)(1)(A) .........................................................................11

**Other Authorities**

U.S. Patent No. 7,044,896 ............................................................................ *passim*

1    Plaintiff Fitness Anywhere LLC ("TRX") respectfully submits this Trial Brief to

2  summarize its theory of the case and identify key evidence.  TRX asserts claims against

3  Defendant WOSS Enterprises, LLC. ("WOSS") for patent infringement, federal trademark

4  infringement, federal and state unfair competition, and tortious interference with prospective

5  economic relationships.

6  **I.      WOSS'S PATENT INFRINGEMENT**

7    TRX will prove that WOSS willfully infringed the claims of U.S. Patent No. 7,044,896

8  (the "'896 patent"), both directly and indirectly (through induced and contributory infringement).

9    **a.      The '896 Patent**

10    TRX is the owner of the '896 patent, titled "Exercise device including adjustable, inelastic

11  straps."  The application which resulted in the '896 patent was filed on April 9, 2003, and the

12  patent issued on May 16, 2006.  The '896 patent names Randal A. Hetrick as the sole inventor.

13  Mr. Hetrick is the founder of TRX, and he will testify at trial to his conception and reduction to

14  practice of his invention and its assignment to TRX.

15    The '896 patent relates to an adjustable exercise device.  Before the '896 patent,

16  individuals utilized bulky and heavy weight systems or a multitude of elastic resistance bands in

17  order to perform full-body workouts.  The invention claimed in the '896 patent provides an

18  inelastic exercise device that can provide a range of resistances and be used for a full-body

19  workout.  The exercise device has an inelastic member comprising a substantially inelastic flat

20  strap, a pair of grips, and an anchor, with a first portion for attaching to a structure and a second

21  portion with a flexible portion including a loop which supports an inelastic member.

22    **b.      The Accused Products**

23    TRX will prove that six WOSS products infringe the '896 patent:  (i) the Titan ½ in. Wide

24  Strap; (ii) the 300 Equalizer; (iii) the Military Gym Style (later renamed the ATTACK); (iv) the

25  Military 1 in. Trainer; (v) the Military 1 ½ in. Trainer; and (vi) the WOSS XT (collectively, the

26  "Accused Products").  WOSS sold the Accused Products began as early as 2011.  All sales are

27  within the 6 year time limitation for obtaining damages.  35 U.S.C. § 286.  TRX and WOSS have

28  stipulated that an exemplary Accused Products infringes, all of the Accused Products infringe.

1    In June 2014—mere months after this complaint was filed—WOSS secretly redesigned

2  the Accused Products.[1]  TRX's technical expert, Harvey Voris, will testify that this redesign,

3  limited to the handle area, was immaterial with respect to the '896 patent, and that both the "pre-

4  redesign" and "post-redesign" versions of the Accused Products infringe claim 1 of the '896

5  patent in a similar fashion.

6        **c.    Direct Patent Infringement**

7        *1.    Literal Infringement*

8    TRX will prove that WOSS directly infringed the '896 patent by making, using, offering

9  to sell, selling, or importing infringing devices.  WOSS has admitted that each of the Accused

10  Products is made, used, sold, and/or offered for sale within the United States.[2]  As such, to prevail

11  on direct infringement, TRX must show that the Accused Products satisfy each and every element

12  of claim 1.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011).  TRX's

13  evidence of WOSS's infringement will include:  (i) a detailed analysis of the Accused Products

14  by TRX's technical expert, Harvey Voris; (ii) the testimony of Randal Hetrick, the inventor of the

15  '896 patent; and (iii) samples of the Accused Products and excerpts from the accompanying

16  product manuals that demonstrate the infringing structures.

17    The evidence of WOSS's infringement will not be difficult for a jury to follow, as the

18  recited features are structural elements that will be readily comprehensible.  The benefits of the

19  patented structure will be explained by Mr. Voris and Mr. Hetrick, and the claimed structures are

20  readily apparent in the Accused Products.

21    Each of the Accused Product is sold with one or more anchor, and while one theory of

22  infringement is shown below, Mr. Voris will confirm that all anchor configurations infringe.  An

23  exemplary Accused Product (the WOSS Titan) using one anchor is pictured below, with the

24  components corresponding to the language of claim 1 labeled:

25

26

27

28

---

[1] Order Granting Plaintiff's Motion for Leave to Supplement its Infringement Contentions, ECF 70 at 2:9–10; Order Granting Plaintiff's Motion For Sanctions, ECF 73 at 4:16–18.  This redesign resulted in $56,835.75 in sanctions from Magistrate Judge Howard R. Lloyd.  ECF 73 and 103.
[2] *See* Undisputed Fact No. 14.



| CLAIM LANGUAGE | EXEMPLARY WOSS PRODUCT |
|---|---|
| An adjustable, inelastic exercise device comprising: | |

an elongated member (**b**) having a pair of ends (**c, d**) separated by a length (**e**) and a mechanism (**f**) for adjusting said length (**e**),

where said elongated member (**b**) is a substantially inelastic flat strap, and



where said pair of ends (**c, d**) includes a first end (**c**) having a first grip (**g**) and a second end (**d**) having a second grip (**h**); and



an anchor (**i**) having a first portion (**j**) for mounting to a structure (not shown) and a second portion (**l**) including a flexible portion (**m**) to support said elongated member (**b**) at a position (**n**) along said length (**e**) when both of said grips (**g, h**) are pulled in a direction (**o**) away from said anchor (**i**),

wherein said flexible portion (**m**) includes a loop (**p**), and wherein said elongated member (**b**) passes through said loop (**p**).



2.   *Doctrine of Equivalents*

Alternatively, TRX will prove that the Accused Products include an equivalent element

for each claim element that is literally present.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*

*Co.*, 535 U.S. 722, 733 (2002) ("The doctrine of equivalents allows the patentee to claim those

1    insubstantial alterations that were not captured in drafting the original patent claim but which

2    could be created through trivial changes.").  An equivalent element is one which performs

3    substantially the same function in substantially the same way to obtain substantially the same

4    result.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997).  Mr. Voris will

5    testify regarding the presence of equivalent structures in the Accused Products, including that

6    (i) the combination of one or more metal loops with an inelastic strap in the Accused Products is

7    an equivalent structure to the recited "flexible portion [which] includes a loop" and (ii) the

8    combination of an elongated flat strap, pair of cam buckles, and ropes passing through handgrips

9    is equivalent to the recited "elongated member having a pair of ends separated by a length and a

10   mechanism for adjusting said length, where said elongated member is a substantially inelastic flat

11   strap, and where said pair of ends includes a first end having a first grip and a second end having

12   a second grip."

13            **d.      Indirect Patent Infringement**

14            WOSS's counsel had indicated WOSS will not argue it does not directly infringe claim 1

15   because it does not sell the Accused Products in an assembled form.[3]  However, if WOSS does

16   make this argument, TRX will prove that WOSS contributed to infringement by its end users and

17   actively induced its end users to infringe claim 1 of the '896 patent.

18            **e.      WOSS's Infringement Is Willful**

19            A defendant engaging in misconduct beyond mere infringement is liable for willful patent

20   infringement.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  To show willful

21   patent infringement, TRX will prove that WOSS was aware of the '896 patent before it began

22   selling the Accused Products and that it continued to infringe even after TRX (i) notified WOSS

23   that it was infringing the '896 patent on March 21, 2014 and (ii) filed this lawsuit on April 14,

24

25   [3] WOSS also is liable for direct patent infringement, regardless of whether the Accused Products
     are sold in an assembled form.  WOSS has assembled and used the Accused Products itself, as
26   evidenced by the photographs contained in the instruction manuals provided with the Accused
     Products.  The Accused Products are also designed to be assembled in an infringing configuration
27   and have no useful non-infringing purpose.  *High Tech Med. Instrumentation, Inc. v. New Image
     Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995); *Paper Converting Mach. Co. v. Magna-
28   Graphics Corp.*, 745 F.2d 11, 19 (Fed. Cir. 1984).

2014.  TRX will introduce the testimony of Mr. Storum[4] and Mr. Ott[5] (the founders of WOSS), who admit that they were aware of TRX's products and the '896 patent before they sold any of the Accused Products.  TRX will prove that WOSS has acted in bad faith, wantonly, maliciously, deliberately, consciously, wrongfully, flagrantly, or with reckless disregard of the asserted claims of the '896 patent.  35 U.S.C. § 284; *Halo*, 136 S. Ct. at 1932.

### f.    WOSS's Affirmative Defenses

WOSS stipulated that it will not directly challenge validity of the '896 patent.  ECF 178.  WOSS's only remaining defense to TRX's patent infringement claims is to contest infringement.

WOSS contends that the Accused Products lack one or more elements specified in claim 1 and thus do not infringe.  Specifically, WOSS has argued that the Accused Products lack at least one of the following elements:  (i) "flexible portion [that] includes a loop"; (ii) "an elongated member having a pair of ends separated by a length and a mechanism for adjusting said length" (where said elongated member is a substantially inelastic flat strap); and (iii) "wherein said flexible portion includes a loop, and wherein said elongated member passes through said loop."  *See, e.g.*, ECF 174 at 10.  TRX's technical expert, Mr. Harvey Voris, will testify that each of these elements is present in each of the Accused Products.  For example, the labeled photograph on pages 3–4 above demonstrates the portions of an exemplary Accused Product that Mr. Voris will testify meet these limitations.  WOSS will not present any expert testimony at trial to rebut Mr. Voris's opinions or otherwise to support WOSS's noninfringement arguments.

WOSS's first and third arguments are legal arguments regarding claim construction, rather than factual questions for the jury, and have already been resolved by this Court.  Essentially, WOSS argues that claim 1 of the '896 patent requires a "flexible loop" through which an elongated member passes and that the Accused Products include a metal, rigid loop.  *See, e.g.*, ECF 151 at 1.  This legal argument is based on a mischaracterization of the Court's claim construction, and it has already been rejected by the Court.  ECF 155 at 2 ("[C]ontrary to Woss' assertion, the [Court's] order [of August 23, 2016] finds that 'claim 1 *does not require* the loop to

---

[4] Storum Dep. 82:23–86:16.
[5] Ott Dep. 38:18–22.

1   be flexible,' not that the loop must be rigid.").

2          WOSS's second argument is that the limitations "an elongated member having a pair of

3   ends separated by a length and a mechanism for adjusting said length" and "where said elongated

4   member is a substantially inelastic flat strap" are absent from the Accused Products because the

5   Accused Products include small lengths of rope connecting the cam buckles to the hand grips.

6   However, WOSS will present no expert witness (and thus no testimony) to rebut Mr. Voris's

7   opinion that the Accused Products contain this structure either literally or under the doctrine of

8   equivalents, as shown for example on pages 3–4 above.

9   **II.       WOSS'S TRADEMARK INFRINGEMENT**

10         TRX will prove that WOSS has willfully infringed TRX's federally registered trademarks

11   SUSPENSION TRAINING and FITNESS ANYWHERE (collectively, the "TRX Marks") by

12   (1) using the marks SUSPENSION TRAINING, SUSPENSION TRAINER, and similar

13   variations thereof; and (2) using the mark SUSPENSION FITNESS in association with the sale in

14   commerce of its identical goods (collectively, the "Infringing Marks").

15         **a.       The TRX Trademarks**

16         TRX owns U.S. Trademark Registrations Nos. 3,255,160 and 3,255,161 for the mark

17   SUSPENSION TRAINING, which were issued by the U.S. Patent and Trademark Office on June

18   26, 2007, for use in connection with manually operated exercise equipment in Class 28 and

19   physical education services, physical fitness consolation, and physical fitness instruction in Class

20   41, respectively.  The first registration was renewed on June 28, 2012 and the second registration

21   was renewed on June 28, 2012.  Both are incontestable.  15 U.S.C.§ 1065. TRX also owns U.S.

22   Trademark Registration No. 2,975,844, issued by the U.S. Patent and Trademark Office on July

23   26, 2005, for the mark FITNESS ANYWHERE in International Class 028 for manually operated

24   exercise equipment.  This registration was renewed on August 23, 2011 and is incontestable.

25         WOSS cannot dispute that the TRX Marks are owned by TRX, are registered, and are

26   incontestable.  TRX will provide evidence from at least Mr. Hetrick, Ms. Christie, and Mr. Zadoff

27   regarding TRX's ownership and use of the TRX Marks throughout the United States. Registration

28   of these marks is a constructive notice of TRX's claim of ownership.  15 U.S.C. § 1072.

1

### b.    WOSS's Infringement

2    "A successful trademark infringement claim under the Lanham Act requires a showing

3    that the claimant holds a protectable mark, and that the alleged infringer's imitating mark is

4    similar enough to "cause confusion, or to cause mistake, or to deceive." *Survivor Media, Inc. v.*

5    *Survivor Productions*, 406 F.3d 625, 630 (9th Cir. 2005).  "While an intent to confuse consumers

6    is not required for a finding of trademark infringement, intent to deceive is strong evidence of a

7    likelihood of confusion.  When the alleged infringer knowingly adopts a mark similar to

8    another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that

9    the public will be deceived." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir.

10    2002).  "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the

11    marketplace is likely to be confused as to the origin of the good or service bearing one of the

12    marks."  *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

13    TRX will prove that WOSS has infringed TRX's trademark SUSPENSION TRAINING

14    and FITNESS ANYWHERE by (i) using an identical mark in connection with goods and services

15    that are similar to those offered by TRX; (ii) using the mark SUSPENSION TRAINER in

16    connection with goods and services that are similar to those offered by TRX; and (iii) using the

17    mark SUSPENSION FITNESS in connection with goods and services that are similar to those

18    offered by TRX.  TRX will prove that WOSS used the Infringing Marks in a manner likely to

19    cause confusion among consumers as to the origin or quality of WOSS's goods.  For example,

20    TRX will prove that WOSS used these marks prominently in its product advertisements and

21    product pages in a manner designed to confuse customers into believing there was some

22    association, relationship, or connection between WOSS's products and those offered by TRX.

23    Both WOSS and TRX sold their products online, and they even sold products side by side using

24    Amazon.com.  As Ms. Christie will testify, a customer searching for the TRX Marks on

25    Amazon.com would encounter a combination of TRX products and WOSS products side by side

26    because of WOSS's use of the Infringing Marks.

27    WOSS has admitted to using the mark SUSPENSION FITNESS in commerce as a mark,[6]

28

---

[6] *See* Undisputed Fact No. 11.

Vedder Price (CA), LLP
Attorneys at Law
San Francisco

FITNESS ANYWHERE LLC'S TRIAL BRIEF
5:14-CV-01725 BLF

and it even attempted to register this mark with the USPTO.  TRX will introduce undisputed examples of WOSS's commercial use of the Infringing Marks and admissions from Mr. Storum and Mr. Ott.  Ms. Christie will also provide evidence of WOSS's using the Infringing Marks.

### c.      Validity of the TRX Marks

WOSS has indicated that it will attempt to challenge the validity of the TRX Marks by alleging that the TRX Marks are descriptive or generic.[7]  As the TRX Marks are incontestable, WOSS cannot allege that they are invalid based on descriptiveness.  *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985) ("We conclude that the holder of a registered mark may rely on incontestability to enjoin infringement and that such an action may not be defended on the grounds that the mark is merely descriptive."); *K.P. Permanent Make-Up Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005) ("A descriptive mark that has become incontestable is conclusively presumed to have acquired secondary meaning.  This means that a defendant in a trademark infringement action cannot assert that an incontestable mark is invalid because it is descriptive and lacks secondary meaning.") (citations omitted).

"Federal registration of a trademark endows it with a strong presumption of validity.  The general presumption of validity resulting from federal registration includes the specific presumption that the trademark is not generic."  *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254 (9th Cir. 1982) (citations omitted).  In order to overcome this strong presumption, WOSS would need to present evidence that the primary significance of the TRX Marks to the consuming public is to denote the goods offered under the TRX Marks and ***not*** TRX as the source of those goods.  *K.P. Permanent Make-Up Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005).  WOSS will not be able to overcome this presumption.  It will not present expert testimony on this issue, and will not call customers to discuss their perceptions of the TRX Marks.[8]

Further, TRX will present evidence establishing that customers recognize the TRX Marks

---

[7] Joint Pretrial Statement, ECF 174 at 3–4.

[8] WOSS has indicated that it will attempt to offer various documents purportedly showing descriptive or generic use of the TRX Marks.  While WOSS has indicated that Cynthia Haden (an employee with WOSS's counsel) may be called to authenticate these documents, neither she nor any other witness designated by WOSS is qualified to present expert testimony regarding customers perceptions or the relevance of such documents regarding validity.

1   as identifying TRX as the source of its goods and services, including testimony from Ms. Christie

2   (a TRX employee tasked with policing TRX's intellectual property), Ms. Leanda Cave (a leading

3   fitness professional), Mr. Tom Campanaro (president of a leading fitness equipment company),

4   and Mr. Hetrick.  TRX will also offer evidence of the degree to which TRX has advertised under

5   the TRX Marks and the success of those efforts with testimony from TRX employees, including

6   Mr. Hetrick, Ms. Christie, and Mr. Paul Zadoff.  This evidence will also establish the strength of

7   the TRX Marks based on the significant advertising expenditures and sales associated with the

8   TRX Marks, as well as TRX's prior efforts to protect the TRX Marks.

9        Finally, TRX will present testimony from Mr. Ott and Mr. Storum to establish (at least

10   circumstantially) that WOSS intentionally copied the TRX Marks, as (i) WOSS was aware of

11   TRX's products sold using the TRX Marks; (ii) the uses of the TRX Marks are properly labeled

12   as registered trademarks; and (iii) WOSS thus knew that it was copying federally registered

13   trademarks when it used the Infringing Marks.

14        **d.    WOSS's Defenses**

15        WOSS has indicated that it will attempt to defend the trademark infringement claims by

16   establishing that its use qualifies as "classic fair use" and that there is no likelihood of confusion

17   because WOSS included its name in connection with each use of the Infringing Marks.

18        *1.    Classic Fair Use*

19        "To establish a classic fair use defense, a defendant must prove the following three

20   elements: [(i)] Defendant's use of the term is not as a trademark or service mark; [(ii)] Defendant

21   uses the term fairly and in good faith; and [(iii)] [Defendant uses the term] [o]nly to describe its

22   goods or services."  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (internal

23   citations and quotations omitted).  In the Ninth Circuit, "the classic fair use defense is not

24   available if there is a likelihood of customer confusion as to the origin of the product."  *Id.*;

25   *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363, 365 n.2 (9th Cir. 1990); *Lindy Pen

26   Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1248 (9th Cir. 1984).

27        TRX will prove that a likelihood of confusion exists as to the origin of the products

28   offered by WOSS under the Infringing Marks.  Thus, the "classic fair use" defense does not

1    apply.  However, to the extent the classic fair use analysis is used to complement the likelihood-

2    of-confusion analysis, TRX will prove that WOSS used the Infringing Marks as trademarks and

3    that WOSS's use was not made in good faith.

4            *2.       Use of Other Marks with the Infringing Marks*

5            WOSS essentially argues that a likelihood of confusion does not exist because it uses its

6    name with the Infringing Marks.  TRX will present evidence that the balance of the *Sleekcraft*

7    factors indicate that a likelihood of confusion exists.  Further, even if customer confusion is

8    dispelled by the presence of WOSS's name on the same page as the Infringing Marks before an

9    actual sale occurs, "initial interest" confusion that creates initial interest in WOSS's products

10   using the TRX's Marks "impermissibly capitalizes on the goodwill associated with a mark and is

11   therefore actionable trademark infringement."  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 204

12   U.S.P.Q. 808 (9th Cir. 1979); *Playboy Enters. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1025

13   (9th Cir. 2004).  Ms. Christie will testify, a customer searching for the TRX Marks on

14   Amazon.com would encounter a combination of TRX products and WOSS products side by side

15   because of WOSS's use of the Infringing Marks.  Viewing these search results, a customer is

16   likely to click on a WOSS product before realizing that WOSS is not associated with TRX.

17           **e.       WOSS's Intentional Trademark Infringement**

18           TRX will prove that WOSS used the Infringing Marks intentionally, knowing them to

19   infringe TRX's rights in and to the TRX Marks.  As discussed above, TRX will prove that WOSS

20   was aware of the TRX Marks at least as early as March 21, 2014 based on TRX's initial letter

21   alleging infringement, and WOSS was or should have been aware of the TRX Marks when

22   WOSS reviewed TRX's products prior to using the Infringing Marks.  Further, TRX will prove

23   that WOSS's use of at least SUSPENSION TRAINING was done with knowledge (or willful

24   blindness) that this mark was a counterfeit mark, as WOSS was or should have been aware of

25   TRX's registration of this mark for identical goods.  *See, e.g.*, 15 U.S.C. § 1117(b).

26   **III.     WOSS'S UNFAIR COMPETITION**

27           TRX will prove that WOSS has competed unfairly with TRX by using confusingly similar

28   imitations of TRX's federally registered marks and that such use is likely to cause confusion,

1  deception, and mistake by creating the false and misleading impression that WOSS's goods are

2  manufactured or distributed by TRX, or are associated with TRX, or have the sponsorship,

3  endorsement, or approval of TRX. TRX contends that WOSS's actions are a violation of

4  15 U.S.C. § 1125(a) and California Business and Professions Code § 17200.

5          **a.      Federal Unfair Competition**

6          Section 43(a)(1) of the Lanham Act sets forth two prongs under which a defendant may be

7  found liable for unfair competition:  (i) trademark infringement and false designation of origin

8  and (ii) false advertising.  15 U.S.C. § 1125(a)(1); *Classic Media, Inc. v. Mewborn*, 532 F.3d 978,

9  990–91 (9th Cir. 2008); *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007).  A

10 defendant may be found liable for unfair competition under *either* of these prongs.

11         WOSS is liable under the first prong if it (i) used in commerce (ii) any word, false

12 designation of origin, false or misleading description, or representation of fact, which (iii) is

13 likely to cause confusion or mistake, or to deceive, as to the sponsorship, affiliation, or origin of

14 WOSS's goods or services.  15 U.S.C. § 1125(a)(1)(A); *Freecycle*, 505 F.3d at 902.  This is

15 essentially the same test as is used for trademark infringement.  *New West Corp. v. NYM Co. of*

16 *California Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979) ("Whether we call the violation [under

17 Section 43(a)(1)(A)] infringement, unfair competition or false designation of origin, the test is

18 identical[:] [i]s there a likelihood of confusion?").  TRX will prove that WOSS has unfairly

19 competed with TRX by infringing the TRX Marks.  *Brookfield*, 174 F.3d at 1046 n. 8 (While

20 Section 43(a) "protects against a wider range of practices," the analysis in terms of trademark

21 infringement and unfair competition under the Lanham act is "oftentimes identical.").

22         WOSS is liable under the second prong if (i) WOSS made a false statement of fact in a

23 commercial advertisement about its own or TRX's product; (ii) the statement actually deceived or

24 has the tendency to deceive a substantial segment of its audience; (iii) the deception is material, in

25 that it is likely to influence the purchasing decision; (iv) WOSS caused its false statement to enter

26 interstate commerce; and (v) TRX has been or is likely to be injured as a result of the false

27 statement, either by direct diversion of sales from itself to WOSS or by a lessening of the

28 goodwill associated with its products. 15 U.S.C. § 1125(a)(1)(B); *Skydive Arizona, Inc. v.*

1 | *Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012)

2 |       TRX will prove that in WOSS's commercial advertising, it misrepresented the nature,

3 | characteristics, qualities, or geographic origin of TRX's goods and/or WOSS's own goods.  15

4 | U.S.C. § 1125(a)(1)(B).  TRX will prove that WOSS falsely (i)  described its own goods as being

5 | "Made in the USA" when a substantial portion of WOSS's products originated outside the United

6 | States and (ii)  described its products as being sold at a discounted price from their list price,

7 | when WOSS has never sold or offered products at the higher price.[9]

8 |      **b.**     **California Unfair Competition**

9 |       California's unfair competition law  prohibits and provides civil remedies for unfair

10 | competition, namely, "any unlawful, unfair or fraudulent business act or practice and unfair,

11 | deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200; *Kwikset Corp. v.*

12 | *Superior Court*, 51 Cal.4th 310, 322 (2011).  "Because the statute is written in the disjunctive, it

13 | is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in

14 | violation of section 17500 (false or misleading advertisements)."  *Lozano v. AT & T Wireless*

15 | *Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  The Ninth Circuit has "consistently held that state

16 | common law claims of unfair competition and actions pursuant to California Business and

17 | Professions Code § 17200 are substantially congruent to claims made under the Lanham Act."

18 | *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1180 n.1 (9th Cir. 2013) (citation omitted).

19 |       TRX will establish that WOSS has competed unfairly under California law using the same

20 | factors provided above with respect to the Lanham Act.  TRX will prove that WOSS's claims that

21 | its products were "Made in the USA" violated the California Business and Professions Code,

22 | which makes it unlawful to claim that a product was made in the United States "if the

23 | merchandise or any article, unit, or part thereof, has been entirely or substantially made,

24 | manufactured, or produced outside of the United States."  Cal. Bus. & Prof. Code § 17533.7.

25 | TRX will further prove that by advertising products at an artificial list price, WOSS violated

26 |

27 | [9] For example, TRX will prove that WOSS advertised a "3000 Equalizer" as having a $129.99 list
28 | price and a $37.49 discounted price on Amazon.com when WOSS had never sold or offered the "3000 Equalizer" for the higher list price.  Ott. Dep. 81:3-18, 82:13-15.

VEDDER PRICE (CA), LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FITNESS ANYWHERE LLC'S TRIAL BRIEF
5:14-CV-01725 BLF

1  California Business and Professions Code § 17501, which states that "[n]o price shall be

2  advertised as a former price of any advertised thing, unless the alleged former price was the

3  prevailing market price as above defined within three months next immediately preceding the

4  publication of the advertisement or unless the date when the alleged former price did prevail is

5  clearly, exactly and conspicuously stated in the advertisement."

## IV.    WOSS'S TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONSHIPS

7          TRX will prove that:  (1) TRX and purchasers of exercise equipment were in an economic

8  relationship that probably would have resulted in an economic benefit to TRX; (2) WOSS knew

9  of the relationship; (3) WOSS intended to disrupt the relationship; (4) WOSS engaged in

10  wrongful conduct by infringing the '896 patent and the TRX Marks and unfairly competing with

11  TRX by making false or misleading statements regarding TRX's and/or WOSS's products; (5) the

12  relationship was disrupted; (6) TRX was harmed; and (7)WOSS's wrongful conduct was a

13  substantial factor in causing TRX's harm.  *Youst v. Longo*, 43 Cal.3d 64, 71, n. 6 (1987).

14          WOSS has alleged that TRX cannot prove that WOSS had the necessary intent and that

15  WOSS has not committed any independent wrongful act which would support TRX's claim.  To

16  establish the requisite intent, TRX needs to prove only that WOSS engaged in an independently

17  wrongful act.  "It is not necessary to prove that the defendant acted with the specific intent, or

18  purpose, of disrupting the plaintiff's prospective economic advantage.  Instead, it is sufficient for

19  the plaintiff to plead that the defendant [knew] that the interference is certain or substantially

20  certain to occur as a result of his action."  *San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155

21  Cal.App.4th 1528, 1544–45 (Cal. App. 2007) (internal citations and quotations omitted).

22          As set forth above, TRX will prove that WOSS engaged in patent infringement, trademark

23  infringement, and both federal and state unfair competition.  Each of these constitutes an

24  independently wrongful act for the purposes of TRX's tortious-interference claim.  *PMC, Inc. v.

25  Saban Entm't, Inc.*, 45 Cal.App.4th 579, 603 (Cal. App. 1996) ("Commonly included among

26  improper means are actions which are independently actionable, violations of federal or state law

27  or unethical business practices, e.g., violence, misrepresentation, unfounded litigation,

28

1  defamation, trade libel or trade mark infringement.")  (internal citation omitted).

2  **V.      DAMAGES**

3          TRX seeks damages for patent infringement, trademark infringement, state and federal

4  unfair competition, and tortious interference with prospective economic relationships.  As more

5  fully explained in the Expert Report of Kimberly Schenk, TRX seeks patent damages based on

6  lost profits and a reasonable royalty for any infringing sales that are not subject to lost profits.

7  TRX will also prove WOSS's profits attributable to the infringement to the extent not included in

8  the royalty or lost profits.  TRX contends treble damages are warranted due to WOSS's willful

9  infringement of the '896 patent and WOSS's intentional infringement of the TRX Marks.  Ms.

10 Schenk calculated that 57.5% of the accused units are subject to lost profits (totalling $7,336,427

11 through October 2016) and that the reasonable royalty damages on the remaining units not subject

12 to the lost-profits analysis total $192,875 through October 2016.

13         TRX's damages expert conducted separate analyses for WOSS's use of the mark

14 SUSPENSION TRAINING / SUSPENSION TRAINER and SUSPENSION FITNESS.  TRX

15 seeks the disgorgement of WOSS's profits from the infringing uses.  TRX bears the burden only

16 of establishing the amount of WOSS's revenue; WOSS then must put forward evidence to prove

17 any expenses that WOSS contends should be deducted.[10]  *Am. Honda Motor Co. v. Two Wheel*

18 *Corp.*, 918 F.2d 1060, 1063 (2d Cir. 1990) (holding that a plaintiff is entitled to the amount of the

19 defendant's gross infringing sales unless the defendant adequately proves an amount of costs to

20 be deducted therefrom).  TRX's damages expert conservatively estimated WOSS's total revenue

21 for products sold using (i)  the mark SUSPENSION TRAINER from 2011 to 2015 to total

22 $832,576 and (ii)  the mark SUSPENSION FITNESS to total $1,749,631.

23 **VI.     ISSUES TO BE DECIDED BY THE COURT**

24         Several important issues of law remain to be decided by the Court after hearing the

25 evidence presented at trial.

26         If the jury concludes that WOSS has infringed the '896 patent, the Court must determine

27 whether WOSS's infringement was willful.

28 ─────────────────────
[10] WOSS has not yet put forward evidence sufficient for TRX's expert to perform this calculation.

1        The Court must decide as a matter of law what conduct by WOSS would satisfy the

2   "wrongful conduct" standard and must specifically state for the jury the conduct that the Court

3   has determined.  *PMC*, 45 Cal.App.4th at 603.  TRX asserts that WOSS's wrongful conduct

4   includes:  (i) infringing the '896 patent; (ii) infringing the TRX Marks; and (iii) unfairly

5   competing with TRX under state and federal law by infringing the TRX Marks and making false

6   or misleading statements regarding TRX's products and/or WOSS's products.[11]

7        TRX seeks injunctive relief to prevent WOSS from further infringing the '896 patent and

8   the TRX Marks as well as from further unfair competition and interference with TRX's

9   prospective economic relationships.  To prove that it is entitled to an injunction order against

10  WOSS, TRX must show that: (1) it has suffered an irreparable injury; (2) remedies available at

11  law, such as monetary damages, are inadequate to compensate for that injury; (3) balancing of

12  hardships between TRX and WOSS weighs in favor of the injunction; and (4) the public interest

13  would not be disserved by a permanent injunction.  *eBay Inc. v. MercExchange, LLC*, 547 U.S.

14  388, 391 (2006).  An injunction is an equitable remedy to be decided by the Court.  *Id.* at 394.

15       TRX will show that both the equities and the public interest require an injunction

16  preventing WOSS from making, using, and distributing products that infringe the '896 patent

17  and/or the TRX Marks.  WOSS's infringement is a clear case of irreparable injury, and an

18  injunction is required to prevent WOSS from further infringement (particularly as WOSS has

19  already perpetrated a "secret redesign" of its products during this litigation).  TRX anticipates that

20  its request for an injunction will be decided by the Court based on evidence presented during trial

21  as well as additional evidence presented through a hearing following at least the trial on liability.

22  Dated:  February 9, 2017          Respectfully submitted,

23                               VEDDER PRICE (CA), LLP

24

25                               By: /s/ Heather M. Sager
                                Heather M. Sager

26                               Attorneys for Plaintiff
                             FITNESS ANYWHERE LLC

27

28  ────────────────────
  [11] Amended Complaint, ECF 46.