**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FITNESS ANYWHERE LLC,<br>　　　　Plaintiff,<br>　　v.<br>WOSS ENTERPRISES LLC,<br>　　　　Defendant. | Case No.  14-cv-01725-BLF<br><br>**ORDER REGARDING MOTIONS *IN LIMINE*** |

Plaintiff Fitness Anywhere LLC ("TRX") brings this lawsuit against Defendant WOSS Enterprises LLC ("WOSS"), alleging infringement of U.S. Patent No. 7,044,896 (the "'896 patent"), infringement of U.S. Trademark Registration Nos. 3,255,160, 3,255,161, and 2,975,844, unfair competition, and tortious interference with prospective economic relationships.  *See* Amended Complaint ¶¶ 28-55, ECF 46.  This Order addresses the parties' motions *in limine*.  For the reasons explained below and on the record at the February 23, 2017 pretrial conference, the motions are decided as follows:

　　Plaintiff's Motion *in Limine* No. 1: WITHDRAWN BY STIPULATION.

　　Plaintiff's Motion *in Limine* No. 2: WITHDRAWN BY STIPULATION.

　　Plaintiff's Motion *in Limine* No. 3: GRANTED IN PART and DEFERRED IN PART.

　　Plaintiff's Motion *in Limine* No. 4: GRANTED.

　　Plaintiff's Motion *in Limine* No. 5: DENIED.

　　Defendant's Motion *in Limine* No. 1: GRANTED IN PART and DENIED IN PART.

　　Defendant's Motion *in Limine* No. 2: DENIED.

　　Defendant's Motion *in Limine* No. 3: DENIED.

　　Defendant's Motion *in Limine* No. 4: DENIED.

Defendant's Motion *in Limine* No. 5: DENIED.

## I. TRX'S MOTIONS *IN LIMINE*

### A. TRX's Motion *in Limine* No. 1 to Bar Dr. Glen Stevick from Testifying at Trial

TRX's motion seeks to exclude Dr. Glen Stevick from testifying as an expert witness. Pl.'s MIL 1, ECF 156. However, the parties have since stipulated that WOSS will neither call Dr. Stevick as a witness nor introduce his reports at trial, and TRX has withdrawn its motion. ECF 178. Accordingly, TRX's Motion *in Limine* No. 1 is WITHDRAWN BY STIPULATION.

### B. TRX's Motion *in Limine* No. 2 to Bar Dr. Glen Stevick from Testifying at Trial Regarding his Second and Third Reports

TRX's motion seeks to exclude Dr. Glen Stevick from testifying as an expert witness regarding the subject matter of his second and third expert reports. Pl.'s MIL 2, ECF 157. However, the parties have since stipulated that WOSS will neither call Dr. Stevick as a witness nor introduce his reports at trial, and TRX has withdrawn its motion. ECF 178. Accordingly, TRX's Motion *in Limine* No. 2 is WITHDRAWN BY STIPULATION.

### C. TRX's Motion *in Limine* No. 3 to Exclude Evidence or Argument in Support of an "Advice of Counsel" Defense

TRX moves to exclude any evidence or argument in support of an "advice of counsel" defense to TRX's claim that WOSS willfully infringed claim 1 of the '896 patent. Pl.'s MIL 3, ECF 171. TRX argues that WOSS should be so precluded because it never identified an attorney in its Rule 26(a) disclosures, nor complied with Patent L.R. 3-7, which requires certain productions and disclosures for parties relying on an "advice of counsel" defense. *Id*. at 2-4.

WOSS responds that TRX's motion is moot because WOSS has elected to not pursue an "advice of counsel" defense. Def.'s Opp. 3 at 1, ECF 184. WOSS also argues that, should TRX "open the door" by suggesting that WOSS should have but did not consult an attorney, a witness should be allowed to truthfully answer (including, if applicable, that (s)he did consult an attorney) and that doing so is not an "advice of counsel" defense. *Id*.

Because WOSS does not dispute that it failed to make the prerequisite disclosures, the Court GRANTS TRX's Motion *in Limine* No. 3 to the extent that it seeks to preclude WOSS from presenting evidence in support of an "advice of counsel" defense. However, the Court will not

categorically exclude questions for which the honest answer is that an attorney was involved. The Court must judge the propriety of such questions in context, and the parties are free to make objections and motions as appropriate. Accordingly, the Court DEFERS ruling on these issues at this stage. In addition, the parties are advised that certain questions and answers may waive the attorney-client privilege, and counsel bears the responsibility of protecting against this.

### D. TRX's Motion *in Limine* No. 4 to Bar Defendant from Referencing or Re-Litigating Any Issues Which Were Previously Resolved by This Court

TRX moves to bar WOSS from referencing or attempting to re-litigate any issues that were previously resolved by this Court. Pl.'s MIL 4, ECF 172. In particular, TRX argues that WOSS should not be permitted to make claim construction arguments that are inconsistent with this Court's Order Construing Claims (ECF 97), including that "flexible portion having a loop" should be construed as "rigid loop." *Id*. at 3-4. TRX also argues that WOSS should not be permitted to reference the Court's ruling on summary judgment, including the fact that the Court invalidated TRX's U.S. Patent No. 7,806,814 (the "'814 patent") and found that WOSS did not infringe certain claims of the '896 patent and U.S. Patent No. 8,043,197 (the "'197 patent"). *Id*. at 4. TRX contends that none of these rulings are relevant to the remaining issues in the case, and that references to the Court's summary judgment rulings would be highly prejudicial. *Id*. at 4.

WOSS responds that TRX's motion is premature, as the relevance and potential prejudice of these rulings depends on the context in which they are used at trial. Def.'s Opp. 4 at 1, ECF 185. In particular, WOSS urges that it is entitled to "broad latitude in impeaching witnesses" and the Court remains free to alter its rulings before trial, both of which may make it appropriate to reference or re-argue the Court's prior rulings. *Id*.

The Court agrees with TRX that references to the Court's summary judgment rulings *per se* are highly prejudicial, and not relevant to the issues that remain to be tried. Accordingly, the Court GRANTS TRX's Motion *in Limine* No. 4 to the extent that it seeks to preclude WOSS from introducing the fact that the Court has previously ruled that the '814 patent is invalid and that certain claims of the '896 and '197 patents are not infringed. WOSS may acknowledge that the '814 patent and certain claims of the '896 and '197 patents are not in this case (e.g., by making

3

statements such as "X patent is not in this trial," or "TRX owns X patent, but is not asserting it against WOSS"), but no more.[1]

The Court also agrees with TRX that WOSS may not re-litigate the Court's claim constructions, or the Court's ruling at summary judgment that "claim 1 does not require the loop to be flexible." Summ. J. Order 26, ECF 150. WOSS will be expected to present evidence and arguments at trial that comply with these constructions. As discussed in detail with respect to WOSS's Motion *in Limine* No. 2, *infra*, any attempt by WOSS to seek reconsideration of the Court's constructions at this point is untimely and inappropriate and, even if the Court were to reconsider its constructions, WOSS's arguments are incorrect on the merits. Accordingly, the Court also GRANTS TRX's Motion *in Limine* No. 4 to the extent that it seeks to preclude WOSS from re-litigating claim constructions (decided either by the Court's claim construction order or at summary judgment) or presenting evidence or arguments that are inconsistent with these constructions.

### E. TRX's Motion *in Limine* No. 5 to Bar WOSS from Introducing Testimony at Trial Regarding New Non-Infringement Theories

TRX moves to bar WOSS from introducing non-infringement theories that it did not disclose in its responses to TRX's non-infringement interrogatory, Interrogatory No. 3. Pl.'s MIL 5, ECF 173. Specifically, TRX argues that WOSS's responses confine it to two theories: (1) the accused products do not contain a "flexible loop," and (2) the accused products are delivered "as a kit of separate components with instructions for assembly" and therefore do not contain "a main strap attached to an anchor." *Id*. at 4. This, TRX contends, precludes WOSS from making non-infringement arguments relating to other claim elements, including "(i) a pair of ends separated by a length and a mechanism for adjusting said length; (ii) where said pair of ends includes a first end

---

[1] At the parties' pretrial conference, WOSS expressed concerns about the impact the Court's ruling would have on its ability to defend against TRX's willfulness claims. The Court's ruling does not preclude WOSS from introducing evidence regarding the steps that it took before the lawsuit was filed that may be probative of willfulness. It simply precludes discussion of what the *Court* did after the lawsuit was filed. Moreover, this ruling does not affect post-trial argument to the Court regarding the Court's final determination of willfulness. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016) ("Section 284 gives district courts the discretion to award enhanced damages against those guilty of patent infringement.").

1  having a first grip and a second end having a second grip; (iii) an anchor; and (iv) wherein said

2  elongated member passes through said loop." *Id*. at 4-5.

3        WOSS responds that TRX's infringement contentions and infringement expert report

4  address how each element of claim 1 is met by the accused products, and thus WOSS should be

5  free to argue that TRX failed to meet its burden of proving infringement with respect to any of

6  these elements. Def.'s Opp. 5, ECF 186. WOSS also argues that all of the non-infringement

7  theories it intends to offer at trial have been known and considered by TRX, and thus, there is no

8  prejudice. *Id*. at 2-3. In particular, WOSS emphasizes that its original interrogatory response cites

9  the "all elements rule" (i.e., that every claim limitation must be met in order for there to be

10  infringement), that TRX addressed the extent to which each element infringed in its expert reports,

11  and that, as a prophylactic measure, WOSS served third supplemental responses to TRX's non-

12  infringement interrogatory on September 19, 2016, which additionally clarified its non-

13  infringement theories. *Id*.

14        The Court agrees with WOSS that WOSS should be permitted to rebut (e.g., through cross-

15  examination and responsive attorney argument) TRX's evidence and arguments that the accused

16  products practice any element of the claim. This is the prerogative of any infringement defendant

17  seeking to hold a plaintiff to its burden of proof.

18        In addition, as to affirmative evidence of non-infringement, the Court finds that WOSS

19  should be permitted present all of the non-infringement positions disclosed in its interrogatory

20  responses, up to and including its third supplemental responses, dated September 19, 2016. Under

21  Rule 37(c), a party who has "fail[ed] to provide information . . . as required by Rule 26(a)" may

22  still be permitted to use that information if "the failure was substantially justified or is harmless."

23  The Court finds that, given the substantial amount of time that has passed since WOSS served its

24  third supplemental interrogatory responses in September, TRX has had sufficient notice of all of

25  the non-infringement positions disclosed therein. Thus, any failure by WOSS to previously

26  disclose these positions is harmless. TRX does not disagree, as, at the parties' pretrial conference,

27  it stated that it would not object to WOSS being limited to the non-infringement theories disclosed

28  in its third supplemental responses or previously served responses.

5

For these reasons, TRX's Motion *in Limine* No. 5 is DENIED. WOSS may rebut TRX's elements of proof, as well as present affirmative evidence of non-infringement consistent with the positions disclosed in its interrogatory responses, up to and including its third supplemental responses, dated September 19, 2016.

## II. WOSS'S MOTIONS *IN LIMINE*

### A. WOSS's Motion *in Limine* No. 1 to Strike Portions of Dr. Harvey Voris's Report and Exclude Testimony

#### i. WOSS's Motion *in Limine* No. 1

WOSS moves to strike certain portions of Dr. Harvey Voris's expert report, which it contends are new theories that were not disclosed in TRX's infringement contentions. Def.'s MIL 1, ECF 158. Specifically, WOSS contends that: (1) for the "flexible portion" element, Dr. Voris's report newly identifies two rigid rings, whereas TRX's infringement contentions identify flexible webbing material; and (2) for the "pair of ends" element, Dr. Voris's report newly identifies hand grips at the end of the flat strap and a length adjusting mechanism, whereas TRX's infringement contentions identify the ends of the flat strap elongated member. *Id*. at 2-5. WOSS also contends that Dr. Voris's report violates Patent L.R. 3-1(g) because it asserts that a TRX trainer practices claim 1, even though TRX did not disclose in its infringement contentions, pursuant to this rule, that any of its products practice claim 1. *Id*. at 5.

TRX responds that Dr. Voris's opinions fall within the same theories disclosed in its infringement contentions because (1) for the "flexible portion" element, its infringement contentions identify the "flexible portion" as being one or more metal rings *and* a portion of webbing, and (2) for the "pair of ends" element, its infringement contentions identify the "ends" as a combination of a buckle, loops, and handgrips. Pl.'s Opp. 1 at 2-4, ECF 191. TRX also contends that, because WOSS's motion only addresses the Titan accused product, the Court should consider it as applying only to that product and permit Dr. Voris to testify as to the other five accused products. *Id*. at 4-5.

As an initial matter, the Court disagrees with TRX that WOSS needed to separately address each accused product in its motion. The parties have agreed that the Titan is

6

representative for all infringement issues in this case and, in any event, all of the accused products have the same types of alleged inconsistencies that WOSS identifies with respect to the Titan. Thus, the Court's consideration of the parties' arguments with respect to the Titan is sufficient to decide WOSS's motion for all accused products.

The Court now turns to the substance of WOSS's motion and addresses each allegedly "new" theory in turn. With respect to the "flexible portion" element, the Court agrees with WOSS that there appears to be some inconsistency between TRX's infringement contentions and Dr. Voris's report: The infringement contentions identify the "flexible portion" as webbing that is attached to several metal rings and the "loop" (which the claim states "the flexible portion includes") as those metal rings. Ex. 2 to Def.'s MIL 1 at 5-7, ECF 158-3 at 6-8. In contrast, Dr. Voris's report identifies the "flexible portion" as metal rings and the "loop" as one part of these rings. Ex. 1 to Def.'s MIL 1 at 3-5 (Ex. G to Voris Report at 3-5), ECF 158-2 at 4-6; *see also* Ex. C to Witness List ¶ 87, ECF 200-4 ("[E]ach of the Post-Redesign products . . . includes . . . a second portion which includes a loop in the form of a WOSS Triangular Ring for supporting the central strap. The WOSS Triangular Ring is attached to the remainder of the anchor using a carabiner or quick link, thereby forming a flexible portion (i.e., a portion that is capable of bending easily without breaking)."). However, the Court also agrees with TRX that the infringement contentions do not preclude Dr. Voris from opining that the "flexible portion" is both webbing and rings, as claim 1 recites that the "flexible portion includes a loop" and the infringement contentions identify the "loop" as rings. The salient point is that Dr. Voris cannot go outside the scope of the notice that TRX's infringement contentions gave. At the pretrial conference, TRX agreed to confine Dr. Voris's testimony to the scope of its infringement contentions. Accordingly, the Court GRANTS WOSS's Motion *in Limine* No. 1 to the extent that it seeks, with respect to "flexible portion," to preclude Dr. Voris from giving testimony that is inconsistent with TRX's infringement contentions.

With respect to the "pair of ends" element, the Court agrees with TRX that Dr. Voris's report does not disclose a new infringement theory. As both parties agree, Dr. Voris's report discloses that the "pair of ends" in the accused products are hand grips and a length adjusting

7

mechanism on the flat strap. Ex. 1 to Def.'s MIL 1 at 1-2 (Ex. G to Voris Report at 1-2), ECF 158-2 at 2-3. TRX's infringement contentions also disclose that the "pair of ends" includes both hand grips and length-adjusting mechanisms. Ex. 2 to Def.'s MIL 1 at 4, ECF 158-3 at 5. Accordingly, the Court DENIES WOSS's motion with respect to "pair of ends," as it seeks to preclude TRX from taking a position to which it is plainly entitled.

With respect to Patent L.R. 3-1(g), TRX does not dispute that it failed to identify any of its products in its infringement contentions, or that this failure precludes it from asserting at trial that a TRX trainer practices claim 1. Accordingly, the Court GRANTS WOSS's Motion *in Limine* No. 1 to the extent that it seeks to preclude Dr. Voris from testifying that a TRX trainer practices claim 1.

### ii. WOSS's Supplemental Motion

At the parties' pretrial conference, WOSS additionally raised the concern that, in TRX's pretrial brief, it stated that Dr. Voris planned to testify regarding the doctrine of equivalents. WOSS argued that Dr. Voris should be precluded from doing so, since TRX did not disclose the doctrine of equivalents in its infringement contentions. TRX responded that Dr. Voris may need to testify regarding the doctrine of equivalents in order to respond to WOSS's late-arising arguments regarding "substantially" inelastic flat straps.

The Court agrees with WOSS that, because TRX did not disclose the doctrine of equivalents in its infringement contentions, Dr. Voris is precluded from testifying regarding the doctrine of equivalents at trial. Accordingly, the Court GRANTS WOSS's motion to the extent that it seeks to preclude Dr. Voris from testifying regarding the doctrine of equivalents. However, should WOSS open the door (i.e., by raising arguments relating to "substantially" inelastic flat straps), Dr. Voris may provide rebuttal.

### B. WOSS's Motion *in Limine* No. 2 to Bar Testimony that an Elongated Member that is Supported on a Rigid Portion or that Passes Through a Rigid Support is Within the Scope of Claim 1

WOSS moves to bar TRX from "presenting at trial any evidence, testimony or argument that an elongated member that is supported on a rigid portion or an elongated member that passes through a rigid support (loop) is within the scope of [claim 1]." Def.'s MIL 2 at 1, ECF 159.

8

WOSS argues that applicants disclaimed rigid supports during prosecution to overcome rejections based on a prior art reference, U.S. Patent No. 5,352,172 to Suzaki ("Suzaki"). *Id*. at 2-4. WOSS also argues that claim differentiation does not compel a different conclusion. *Id*. at 5.

TRX responds that WOSS's motion is an improper attempt to re-litigate claim construction and should be denied. Pl.'s Opp. 2, ECF 192. As to WOSS's specific arguments, TRX contends that claim differentiation is relevant, that WOSS's prosecution history arguments refer to characterizations of limitations that do not appear in claim 1, and that WOSS incorrectly conflates prosecution history estoppel (a limitation on the doctrine of equivalents) with prosecution disclaimer (a claim construction principle). *Id*. at 2-4. TRX also argues that, even if the Court were to entertain the possibility of prosecution disclaimer, there is none here because nowhere during prosecution did TRX unequivocally and unambiguously disavow a rigid loop. *Id*. at 4-5.

The Court agrees with TRX that WOSS's motion is, at bottom, a thinly-veiled motion for reconsideration. Almost two years ago, on March 20, 2015, the parties filed a joint claim construction statement setting forth the claim construction disputes that the Court must resolve. Although the parties identified "loop" as a term for construction, neither of the parties' proposed constructions addressed whether the "loop" must be flexible. *See* ECF 48. From that point forward, there was no indication throughout the entire *Markman* process that this was an issue the Court needed to resolve. *See* ECF 48, 67, 71, 75. On the contrary, TRX agreed at the *Markman* hearing to accept *WOSS's* proposed construction for "loop": "a length of material made of one or more pieces formed into a ring or closed or partially closed curved section." Order Construing Claims 4, ECF 97. The Court so construed the term. *Id*. at 5.

It was not until summary judgment—roughly one year later—that the Court became aware that the parties' disputed whether the "loop" must be flexible. In its motion for summary judgment, WOSS argued that the "loop" must be flexible and thus, because the "loop" in the accused products was a rigid metal ring, they did not infringe. WOSS's SJ Mot. 15, ECF 122. TRX disagreed. TRX's SJ Mot. 18, ECF 130. In its August 22, 2016 order on summary judgment, the Court considered each party's arguments and directly addressed this issue: "[t]he Court finds claim 1 does not require the loop to be flexible." Summ. J. Order 26, ECF 149.

9

Although this conclusion did not issue as a part of the Court's claim construction order (nor could it have, given the parties' failure to bring this dispute before the Court sooner), it was a determination on claim scope, issued after both sides had the opportunity to be heard on the issue—effectively, a claim construction ruling.

WOSS did not formally seek reconsideration of the Court's decision. It did, however, file an administrative motion on September 2, 2016 seeking permission to file a second summary judgment motion that the '896 patent is invalid "based on the court's recent construction of Claim 1 of the 896 Patent that the 'loop' is or can be rigid." ECF 151. It also suggested that the Court "*sua sponte* reconsider that construction." *Id*. The Court carefully considered WOSS's arguments, but ultimately rejected them. ECF 155.

Now, WOSS's Motion *in Limine* No. 2 effectively asks the Court to reconsider its ruling that "claim 1 does not require the loop to be flexible." Summ. J. Order 26, ECF 149. At this juncture, this request is inappropriate. Motions *in limine* are not vehicles for re-litigating issues that have already been before the Court. This district's local rules set out specific procedures for seeking reconsideration of an interlocutory order. *See* Civil L.R. 7-9. If WOSS had wanted the Court to reconsider its ruling, it should have followed these procedures. WOSS's request is also untimely. For months the parties have been operating under the Court's determination that "loop" is not required to be flexible. Expert opinions have been based on this, and the parties have likely factored this into their preparation of witnesses and evidence for trial. To reverse course now would create severe prejudice, and inject significant uncertainty into trial preparations. The Court declines to do this. Finally, this is not a case where *O2 Micro* compels the Court to go outside its ordinary course of proceedings and resolve outstanding claim construction issues. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008). *O2 Micro* simply requires that "[w]hen the parties raise an actual dispute regarding the proper scope of . . . claims, the court, not the jury, must resolve that dispute." 521 F.3d at 1360. The Court did precisely this in its summary judgment ruling.

Because reconsideration is not warranted, the Court need go no further and can deny WOSS's Motion *in Limine* No. 2 on this basis. However, to be thorough, the Court has also

10

considered the merits of WOSS's claim construction arguments and found that its previous conclusion that "claim 1 does not require the loop to be flexible" is correct.

Generally, the words of a claim should be given their "ordinary and customary meaning," which is "the meaning that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). Courts may deviate from this in only two limited instances: (1) inventor lexicography, and (2) specification or prosecution history disavowal. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). "[T]he standard for disavowal is exacting, requiring clear and unequivocal evidence that the claimed invention includes or does not include a particular feature." *Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016).

Here, the specification of the '896 patent does not unequivocally disavow non-flexible loops. There is no recitation that "the present invention" (not just an "embodiment" or "aspect" of the invention) has the feature of flexible loops. *See Poly-America*, 839 F.3d at 1136; *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016). There is also no statement disparaging prior art solutions that have non-flexible loops. *See Poly-America*, 839 F.3d at 1136; *Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513-14 (Fed. Cir. 2015); *SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1317 (Fed. Cir. 2015). Finally, although it is true that all of the preferred embodiments of the anchor (two total, depicted in Figs. 5 and 14), have "loops" made of flexible material, this is a small enough sample size that disclaimer remains ambiguous. *Cf. GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("A patent that discloses only one embodiment is not necessarily limited to that embodiment. It is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.") (internal citations omitted). Moreover, these descriptions are not also coupled with the fact that "every section of the specification indicates the importance of [flexible loops]," which means that any consistency in disclosure here, by itself, cannot rise to the level of disclaimer under *Poly-America*. *See* 839 F.3d at 1137 ("Every embodiment described in the specification has inwardly extended short seals and every section of the specification

1    indicates the importance of inwardly extended short seals.  These two facts provide together a
2    proper reason to limit the claims in this way.").  For all of these reasons, there is no "clear and
3    unequivocal evidence" of specification disavowal.  As such, this case stands apart from *Poly-*
4    *America*, a case which WOSS heavily relies on, which had all of these aspects: (1) limiting
5    statements about "the present invention;" (2) disparaging statements about the prior art; and (3)
6    consistency across embodiments, coupled with statements praising the common feature.  *See id*. at
7    1136-37.  Thus, the Court's decision is consistent with this precedent.

8          The prosecution history of the '896 patent also does not unequivocally disavow non-
9    flexible loops.  WOSS is correct that Suzaki discloses a metal component, which appears to serve
10   a similar function to the "loop" in the '896 patent.  *See, e.g.*, Suzaki at col. 2 ll. 27-63, Ex. 9 to
11   Def.'s MIL 2 at 11-17[2], ECF 159-6 at 38-44.  WOSS is also correct that, during prosecution, one
12   of the ways in which the applicants argued their invention differed from Suzaki was that Suzaki
13   did not disclose a flexible or non-rigid loop.  *See, e.g.*, Ex. 9 to Def.'s MIL 2 at 38, ECF 159-6 at
14   65 ("Suzaki thus does not teach or suggest a flexible (that is, non-rigid) support.").  However, it is
15   not clear that this was the specific basis upon which the examiner eventually allowed the '896
16   patent to issue.  Instead, the applicants also argued that Suzaki still permitted the rope to move
17   through its support while the invention did not, and made amendments that required the elongated
18   member to be a "flat strap" (Suzaki used a rope) and to pass through a "loop" (Suzaki's
19   component was rectangular with bars).  *See id*. at 37-38; Ex. 5 to Opening CC Br. at 11, ECF 67-5
20   at 13.  In the end, the examiner gave, as his reasons for allowance, a statement which
21   acknowledged a combination of these aspects: "the prior art does not disclose an exercise device
22   as claimed wherein the elongate member is a flat strap that is passed through the loop of a flexible
23   portion of the anchor."  *Id*.

24         In this sense, this prosecution history is distinguishable from that in *Poly-America*:  there,
25   the applicant specifically argued that one specific feature ("short seals" that extended inward to
26   reduce the opening width of the patented trash bag) was what distinguished the invention over the

---

[2] Unless otherwise noted, page numbers corresponding to Ex. 9 to Def.'s MIL 2 refer to the pagination that WOSS has added.

prior art, and the examiner allowed the claims on that basis. *See* 839 F.3d at 1135 (quoting applicant argument that "[t]hus, applying Applicant's claimed definitions of the terms, the 'relaxed upper opening width' of Schneider is the exact same as the 'bag proper width,' not less than the 'bag proper width' as required by Applicant's independent claims" and examiner response that "the prior art fails to teach elastic drawstrings welded into the bag hem at short seals that form an upper opening that is smaller than the width of the bag"). By contrast, there is no clear statement here by either the applicants or the examiner that make it clear that the *mere flexibility of the loop* was what distinguished Suzaki. Thus, the clear example of prosecution history disclaimer that animated *Poly-America* is not present here. Because the standard for disavowal is so "exacting," the Court will not infer disavowal from something less.

Accordingly, because WOSS's Motion *in Limine* No. 2 is untimely and inappropriate, and, even if the Court were to consider it, incorrect on the merits, WOSS's motion is DENIED.

### C. WOSS's Motion *in Limine* No. 3 to Prevent Plaintiff From Calling as Witnesses Previously Undisclosed Persons

WOSS moves to exclude certain of TRX's witnesses from testifying at trial: Marisa Christie, Pete Dickman, Kiran Gowda, Todd Herschberg, Anil Shetty, and Paul Zadoff. Def.'s MIL 3, ECF 160. WOSS contends that none of these witnesses was disclosed before September 13, 2016, when TRX listed them on a draft witness list. *Id*. at 1.

TRX responds that this is not true, and that these witnesses were disclosed on July 26, 2016. Pl.'s Opp. 3, ECF 193. Specifically, TRX points out that its supplemental Rule 26(a)(1) disclosures, served July 26, 2016, identify "[a]ll individuals identified in the reports of TRX's testifying experts" and that the opening report of its damages expert, Ms. Kimberly Schenk, identified each of the disputed witnesses as people with whom she had discussions and/or relied on. *Id*. at 1-2.

The Court agrees with TRX that the July 26, 2016 disclosures sufficiently identify the witnesses. WOSS's Motion *in Limine* No. 3 is DENIED.

### D. WOSS's Motion *in Limine* No. 4 to Prevent Plaintiff from Offering Kimberly Schenk's Testimony as an "Expert" on Lost Profits Damages

WOSS moves to exclude the opinions relating to lost profits damages of TRX's expert,

13

Ms. Kimberly Schenk, under Federal Rules of Evidence 403 and 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Def.'s MIL 4, ECF 163. WOSS complains that Ms. Schnek's lost profits opinions are based on a "fatally flawed" methodology because (1) her calculations are based on the entire price of TRX's products instead of apportioning for the anchor component, which WOSS contends is the true subject of the '896 patent; (2) she wrongly assumes that all three of the patents originally asserted in this action are valid; (3) she wrongly assumes that all three of the patents originally asserted in this action are infringed; (4) she assumes that there are no non-infringing alternatives, which WOSS contends is incorrect because certain of its products that are not accused in this action and products offered by third-party competitors qualify as non-infringing alternatives; (5) she assumes that TRX's suspension trainers practice the '896 patent, even though TRX never complied with Patent L.R. 3-1(g) and disclosed that its products practice the '896 patent; and (6) she has no reliable, evidentiary basis for her opinion that, but for WOSS's infringement, TRX's sales would grow 20%. *Id*. at 1-4.

In opposition, TRX argues that the majority of WOSS's complaints are directed to the factual bases of Ms. Schenk's opinion, which are properly addressed through cross-examination, not exclusion under *Daubert*. Pl.'s Opp. 4, ECF 194. TRX also argues that these factually-focused attacks are wrong because (1) the Court's summary judgment rulings on infringement and validity have no impact on Ms. Schenk's opinions; (2) Ms. Schenk did address non-infringing alternatives and factored price sensitivity into her analysis; (3) the assumption that TRX practices the '896 patent is immaterial, as the Federal Circuit has held that lost profits are available for products that directly compete with the infringing devices, even if they do not themselves practice the invention; and (4) Ms. Schenk's 20% growth opinion is supported by a reliable evidence and methods. *Id*. at 2-4. TRX admits that WOSS's complaints regarding apportionment go beyond attacking factual assumptions, but argues that this is also unfounded because (1) Ms. Schenk considered apportionment and correctly concluded it does not apply here; and (2) regardless, apportionment is not legally required to establish lost profits in this case. *Id*. at 4-5.

### i. Legal Standard

Federal Rule of Evidence 702 provides that a qualified expert may testify if "(a) the

expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert*, 509 U.S. at 589, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999), the Supreme Court clarified that the "basic gatekeeping obligation" articulated in *Daubert* applies not only to scientific testimony but to all expert testimony. The Supreme Court also made clear that the reliability inquiry is a flexible one, and "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id*. at 153; *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003).

"*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) aff'd, 131 S. Ct. 2238 (2011). So long as an expert's methodology is sound and his opinions satisfy the requirements of Rule 702, underlying factual disputes and how much weight to accord the expert's opinion are questions for the jury. *Micro Chem.*, 317 F.3d at 1392; *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

### ii. Discussion

The Court addresses each of WOSS's alleged deficiencies in turn. First, with respect to apportionment, the Court agrees with TRX that Ms. Schenk need not address apportionment for her opinions to pass muster under Rule 702. Ms. Schenk conducted her lost profits analysis according to the *Panduit* factors. Although the Federal Circuit has not commented on this approach, at least one court in this district has found that apportionment is not required when a patentee claims lost profits based on *Panduit*, reasoning:

> *Panduit* is an alternative theory of establishing lost profits, *see Presidio Components Inc.*, 702 F.3d at 1360, *DePuy Spine*, 567 F.3d at 1331, and A10 has not provided case law that supports its argument

> that under that theory, apportionment is necessary. The Federal Circuit very recently opined that the *Panduit* factors "place no qualitative requirement on the level of demand necessary to show lost profits," *see Versata Software, Inc. v. SAP America, Inc*., —— F.3d ——— (Fed. Cir. 2013), thus suggesting that apportionment—at least as consumer demand stands as a way of showing apportionment—is unnecessary under *Panduit*.

*Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 2013 WL 10601009, *2-3 (N.D. Cal. 2013). The Court finds this reasoning persuasive and adopts it here. Thus, Ms. Schenk's failure to apportion does not render her lost profits opinions unreliable.

With respect to WOSS's second and third arguments that Ms. Schenk assumes the wrong set of asserted patents and claims in her analysis, the Court observes that Ms. Schenk addressed the Court's summary judgment rulings in her supplemental report. Thus, the current version of her opinions correctly reflect the current scope of TRX's infringement case. These are not valid grounds to exclude her opinions.

With respect to non-infringing alternatives, the Court finds that Ms. Schenk also addressed these topics in her report. *See* Ex. 1 to Def.'s MIL 4 ¶¶ 49-50, ECF 163-1. This is also not a basis upon which to exclude her opinions.

With respect to WOSS's concerns regarding Patent L.R. 3-1(g), the Court agrees with TRX that it need not show that it is selling products that practice the patented invention. In *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995), the Federal Circuit confirmed that "[w]hether a patentee sells its patented invention is not crucial in determining lost profits damages." It suffices that it is selling products for which it is allegedly losing profits. *Id*. There is no dispute here that TRX sells such products.

With respect to WOSS's final set of arguments regarding the reliability of Ms. Schenk's opinions on projected sales growth and related figures, the Court agrees with TRX that these constitute proper Rule 702 testimony. Ms. Schenk appears to have consulted reliable sources, including financial reports, industry reports, and knowledgeable TRX personnel, and used a reasoned approach in coming up with her opinions. WOSS's concerns regarding Ms. Schenk's assumptions or decisions to consult certain sources are the proper subject of cross-examination.

Accordingly, because none of WOSS's alleged deficiencies provide a basis for excluding

16

Ms. Schenk's opinions under *Daubert* or Rule 702, WOSS's Motion *in Limine* No. 4 is DENIED.

**E.  WOSS's Motion *in Limine* No. 5 to Prevent Plaintiff from Offering Kimberly Schenk's Testimony as an "Expert" on Reasonable Royalty Damages**

WOSS moves to exclude the opinions relating to reasonable royalty damages of TRX's expert, Ms. Kimberly Schenk, under Federal Rules of Evidence 403 and 702 and *Daubert*, 509 U.S. at 589.  Def.'s MIL 5, ECF 168.  WOSS's motion challenges Ms. Schenk's opinions relating to both TRX's trademark claims and patents claims, so the Court addresses each in turn.

**i.  Trademark Damages**

WOSS attacks what it perceives as Ms. Schenk's reasonable royalty opinions relating to TRX's trademark claims, arguing that (1) she wrongly equated the Nautilus negotiation with a hypothetical TRX negotiation, even though, according to WOSS, these situations are distinguishable because infringement was not disputed with Nautilus to the same extent it is here; (2) she incorrectly inflated the value of the Icon licensing agreements; (3) she failed to determine what portion of WOSS's sales was attributable to its infringing acts; and (4) she failed to demonstrate actual confusion or likelihood of confusion, and did not account for this "weakness" in TRX's claims in her assessment of a hypothetical negotiation.  *Id*. at 4-5.

TRX responds that WOSS's complaints are "nonsensical" because Ms. Schenk did not use a reasonable royalty methodology in assessing trademark damages.  Pl.'s Opp. 5 at 2, ECF 195.  Instead, TRX points out, trademark law bases damages on a defendant's profits.  *Id*. at 2-3.  TRX also refutes WOSS's remaining complaints, arguing that (1) Ms. Schenk did not need to prove actual confusion or likelihood of confusion, as these are liability issues; and (2) the license agreements that WOSS takes issue with are not part of Ms. Schenk's trademark damages opinions (but were instead part of her patent damages opinions).  *Id*. at 3-4.

The Court agrees with TRX that a reasonable royalty analysis is not applicable to trademark damages.  The Lanham Act provides that a plaintiff may recover lost profits subject to principles of equity.  15 U.S.C. § 1117(a).  Further, WOSS's remaining complaints relate to liability, not damages.  Accordingly, the Court DENIES WOSS's Motion *in Limine* No. 5 to the extent it seeks to exclude Ms. Schenk's testimony regarding trademark damages.

### ii. Patent Damages

WOSS complains that Ms. Schenk's reasonable royalty opinions relating to TRX's patent claims are unreliable because (1) she did not apportion the value of patented features as compared to non-patented features; and (2) she wrongly assumed that non-infringing features do not contribute value. Def.'s MIL 5 at 1-3, ECF 168. WOSS particularly faults Ms. Schenk for characterizing the handle grip of the '814 patent as "fundamental" and leading to "significant commercial success," when it was ultimately invalidated at summary judgment. *Id*. at 2. According to WOSS, "no jury could unscramble what a proper royalty base might be." *Id*. at 3.

TRX disagrees, arguing that Ms. Schenk appropriately addressed apportionment in her opinions. With respect to royalty base, TRX argues that Ms. Schenk considered apportionment and reasonably determined that none was warranted. Pl.'s Opp. 5 at 4, ECF 195. With respect to royalty rate, TRX argues that Ms. Schenk's opinions reflect apportionment because "[h]er analysis of the income approach, market approach, and the *Georgia-Pacific* factors all take into account the relative importance of TRX's inventive contribution" and that she reasonably determined, ultimately, that no apportionment of the royalty base was warranted. *Id*. at 4-5. TRX also argues that, to the extent WOSS's motion attacks Ms. Schenk's use of the license agreements in connection with her patent damages opinion, its complaints are legally and factually unfounded. *Id*. at 6.

The Court addresses each of WOSS's complaints in turn. With respect to apportionment, the Court notes, as an initial matter, that it agrees with WOSS that Ms. Schenk's apportionment analysis is deficient. Although the Federal Circuit has recognized that "there may be more than one reliable method for estimating a reasonable royalty," *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) ("*CSIRO*"), it has generally found that a reliable apportionment analysis should be conducted by adjusting the royalty base, not the royalty rate. *See, e.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67, 68 (Fed. Cir. 2012) (rejecting the use of a royalty base associated with the complete product and a one-third apportionment adjustment of the royalty rate). This is because the alternative "cannot help but skew the damages horizon for the jury," as "[a]dmission of . . . overall [product]

revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" *Id*. (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)). In addition, the Federal Circuit has held that "qualitative testimony that an invention is valuable—without being anchored to a quantitative market valuation—[is] insufficiently reliable." *CSIRO*, 809 F.3d at 1302. Ms. Schenk's opinion appears to run afoul of both of these principles, as she attempts no apportionment of the royalty base, and to the extent that any royalty rate calculations "reflect apportionment," Pl.'s Opp. 5 at 4, they largely rely on qualitative assessments about the relative important of TRX's invention and adjustments to the royalty rate.

However, in this case, Ms. Schenk's failure to adequately address apportionment is not a basis for exclusion under Rule 702. "'The essential requirement' for reliability under *Daubert* 'is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.'" *CSIRO*, 809 F.3d at 1301 (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)). This does not mean that an expert must always apportion; instead, the expert remains free to determine that this "incremental value" and the value for the entire product are one in the same. Here, Ms. Schenk has done precisely that. Ex. A to Pl.'s Opp. 5 ¶ 31, ECF 195-1; Ex. 1 to Def.'s MIL 5 ¶¶ 42-43, ECF 168-1. In reviewing Ms. Schenk's reasons and bases for concluding that apportionment is not needed, the Court finds that, although they are stated at a relatively high level, they are sufficient to pass muster under Rule 702. If WOSS disagrees with any of Ms. Schenk's reasons or underlying assumptions, this is the proper subject of cross-examination. They are not so deficient so as to warrant exclusion at this stage.

The Court also notes that WOSS's specific reasons for why Ms. Schenk should have apportioned—because the '896 patent concerns just the anchor portion of the accused products— does not make sense. By its plain language, claim 1 concern an "exercise device," not just an anchor. Thus, the Court cannot fault Ms. Schenk for not apportioning based on this component. While it is possible that there may be other non-patented components in the accused products such

that apportionment is still needed to reflect only the contribution of the '896 patent, WOSS has not identified these components here. Thus, for this reason as well, WOSS's motion is unpersuasive.

Turning to Ms. Schenk's use of the license agreements, to the extent WOSS's motion attacks this in connection with her patent damages opinion, the Court agrees with TRX that this is proper Rule 702 testimony. Ms. Schenk appears to have consulted reliable sources and she adequately explains her reasoning in conducting her "market approach" analysis. To the extent WOSS disagrees with certain factual assumptions or Ms. Schenk's decisions to consult certain sources, these are are the proper subject of cross-examination.

Accordingly, because none of WOSS's alleged deficiencies provide a basis for excluding Ms. Schenk's opinions under *Daubert* or Rule 702, WOSS's Motion *in Limine* No. 5 is DENIED to the extent it seeks to exclude Ms. Schenk's testimony regarding patent damages.

**IT IS SO ORDERED.**

Dated: March 6, 2017

BETH LABSON FREEMAN
United States District Judge