# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| FITNESS ANYWHERE LLC, <br> Plaintiff, <br> v. <br> WOSS ENTERPRISES LLC, <br> Defendant. | Case No. 14-cv-01725-BLF <br><br> **ORDER REGARDING POST-TRIAL MOTIONS** <br> [Re: ECF 283, 284] |

Following a six-day jury trial, the jury returned a verdict finding that Defendant WOSS Enterprises LLC ("WOSS") willfully infringed claim 1 of U.S. Patent No. 7,044,896 ("the '896 patent"), owned by Plaintiff Fitness Anywhere LLC ("TRX"). Verdict at 2, ECF 235. The jury also found that WOSS willfully infringed TRX's "Suspension Training" trademark. *Id*. at 3. The jury awarded a total of $6,761,374 in damages: $5,750,000 in lost profits damages for patent infringement; $191,156 in reasonable royalty damages for patent infringement; and $820,220 in damages for trademark infringement. *Id*. at 2, 4.

After a prolonged stay pending WOSS's Chapter 7 bankruptcy proceedings, *see* ECF 254, TRX renoticed two post-trial motions, moving the Court for (1) enhanced damages and pre- and post-judgment interest pursuant to 35 U.S.C. § 284 and 15 U.S.C. § 1117(a) and attorneys' fees and costs pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117, Dam. Mot., ECF 283; and (2) a permanent injunction, Inj. Mot, ECF 284. For the reasons herein, TRX's motion for attorneys' fees and costs and for enhanced damages and pre- and post- judgment interest is GRANTED IN PART and DENIED IN PART; and TRX's motion for a permanent injunction is GRANTED.

## I. BACKGROUND

### A. Parties

TRX provides fitness-related technology, equipment, workout programs, and education courses and sells, among other things, resistance products, including various straps and ropes, designed for body-weight resistance exercise. First Am. Compl. ("FAC") ¶¶ 9, 14, ECF 46. TRX owns the '896 patent, as well as U.S. Patent Nos. 7,806,814 ("the '814 patent") and 8,043,197 ("the '197 patent") (collectively, "the Asserted Patents"), which are directed toward exercise devices and their components. *Id*. ¶¶ 10–12. TRX also owns a federal trademark and service mark registration for the SUSPENSION TRAINING mark. *Id*. ¶¶ 15–16.

WOSS manufactures, distributes, and sells competing fitness-related technology and equipment under a variety of names and allegedly uses variations of the terms SUSPENSION TRAINING and SUSPENSION TRAINER on its products and website. *Id*. ¶¶ 17–18.

### B. Asserted Patent

The '896 patent, entitled "Exercise device including adjustable, inelastic straps," was filed on April 9, 2003 and issued on May 16, 2006. It discloses a resistance exercise device comprising three basic parts: an anchor (410); an inelastic, adjustable-length strap (420); and two ends with grips (421a and 421b). Figure 4 illustrates these components:



FIG._4

Claim 1 of the '896 patent claims the exercise device as:

1. An adjustable, inelastic exercise device comprising:

2

> an elongated member [420] having a pair of ends [421a, 421b] separated by a length and a mechanism [422a, 422b] for adjusting said length, where said elongated member is a substantially inelastic flat strap and, where said pair of ends includes a first end having a first grip [423a] and a second end having a second grip [423b]; and
>
> an anchor [410] having a first portion [411] for mounting to a structure and a second portion [413] including a flexible portion to support said elongated member at a position along said length when both of said grips are pulled in a direction away from said anchor, wherein said flexible portion includes a loop [415], and wherein said elongated member passes through said loop.

'896 patent, col. 11 ll. 47–60.

To use the exercise device, the user secures the anchor to a support, such as a door, and then can perform various exercises by gripping the handles or placing the user's feet in the handles and positioning the user's body in different ways. '896 patent, col. 4 ll. 53–57; Figs. 15A–15I (depicting various exercises).

### C. Procedural History

On March 21, 2014, TRX sent WOSS a cease-and-desist letter concerning TRX's patents and marks. On April 14, 2014, TRX instituted the instant action against WOSS claiming infringement of the Asserted Patents, trademark infringement, federal and state unfair competition, and tortious interference with prospective economic relationships. Compl. ¶¶ 20–45, ECF 1. WOSS denied these allegations and counterclaimed for declaratory judgment that the Asserted Patents are invalid and not infringed. Ans., ECF 28.

TRX served its original infringement contentions on October 16, 2014, identifying eight of WOSS's products as infringing the Asserted Patents: (1) 3000 Equalizer; (2) 3000 Stable; (3) Military Gym Style; (4) Military 1 in Trainer; (5) Military 1 1/2 in Trainer; (6) SST Suspension Trainer; (7) Titan 1 1/2 in Wide Strap; and (8) WOSS XT (collectively, "Accused Products"). *See* ECF 73. TRX supplemented its complaint on January 21, 2015 to add an additional claim for trademark infringement. FAC ¶¶ 28–33. The parties engaged in claim construction starting in March 2015. *See* ECF 48.

In May 2015, TRX moved for monetary sanctions because WOSS had redesigned the "foot loops" on the Accused Products in June 2014, but failed to disclose such redesign in either its Federal Rule of Civil Procedure 26(a) initial disclosures served on August 14, 2014 or its Patent

3

Local Rule 3-4(a) disclosures served on December 1, 2014. ECF 73 at 2. Instead, WOSS first disclosed the redesign in its Responses to Defendant's First Set of Interrogatories on March 9, 2015. Magistrate Judge Lloyd granted TRX's motion. *Id*. WOSS moved for relief from Judge Lloyd's order, which this Court denied. ECF 84. WOSS then filed a Motion for Leave to File "Statement of Recent Decision," which this Court also denied, ECF 89. In December 2015, after receiving itemized proof of its attorneys' fees, ECF 76, and WOSS's responsive objections, ECF 83, Magistrate Judge Lloyd issued an order awarding TRX $56,835.75 in sanctions. ECF 103. WOSS again moved for relief from Judge Lloyd's order, which this Court denied. ECF 108.

In November 2015, WOSS filed an administrative motion for leave to file three summary judgment motions, which the Court denied. ECF 95.

On November 19, 2015, the Court issued its claim construction order, construing the only two terms which the parties identified as disputed, "anchor" and "is integrally attached." ECF 97.

In January 2016, TRX moved for a preliminary injunction enjoining WOSS from selling or offering for sale the Accused Products. ECF 115-1. In March 2016, WOSS filed a motion for summary judgment that the '814 patent was invalid and that all three Asserted Patents were not infringed. ECF 122. In April 2016, TRX filed a motion for partial summary judgment that WOSS's SST Suspension Trainer infringed the '814 patent. ECF 132. On August 23, 2016, the Court issued an order granting summary judgment that the '814 patent was invalid, all claims of the '197 patent were not infringed, and claims 12 and 21 of the '896 patent were not infringed, but denying summary judgment that claim 1 of the '896 patent was not infringed. ECF 150. It also denied TRX's motion for a preliminary injunction. *Id*.

Following the Court's ruling, in September 2016, WOSS filed a motion for administrative relief requesting leave to bring a second motion for summary judgment because the Court allegedly "first construed the 'flexible portion having a loop' element of Claim 1 to be a rigid loop in its Order of August 23, 2016." ECF 151 at 1–2. The Court denied WOSS's motion and clarified that "contrary to WOSS' assertion, the [Court's summary judgment] order finds that 'claim 1 *does not require* the loop to be flexible,' not that the loop must be rigid." ECF 155 at 2.

In January 2017, WOSS filed another motion for administrative relief, seeking to shorten

4

the time for TRX to respond to WOSS's Motion in Limine ("MIL") #1, which sought to strike portions of Mr. Voris's report on the grounds that they materially differed from TRX's Patent L.R. 3-1 infringement contentions. ECF 181. The Court denied WOSS's motion. ECF 183.

The case proceeded to trial in March 2017. The following issues were tried before the jury: (1) infringement of claim 1 of the '896 patent; (2) infringement of the "SUSPENSION TRAINING" trademark under the Lanham Act; (3) infringement of the "SUSPENSION TRAINING" and/or "FITNESS ANYWHERE" trademarks through its use of "SUSPENSION FITNESS" under the Lanham Act; and (4) unfair competition. *See* ECF 213. TRX voluntarily dismissed its claims relating to tortious interference before trial. ECF 224. Following a six-day jury trial, spanning March 13–22, 2017, the jury returned a verdict finding that (1) WOSS willfully infringed claim 1 the '896 patent; (2) WOSS willfully infringed TRX's "SUSPENSION TRAINING" trademark; (3) WOSS did not infringe TRX's SUSPENSION TRAINING" and/or "FITNESS ANYWHERE" trademarks through its use of "SUSPENSION FITNESS;" and (4) WOSS did not unfairly compete with TRX. ECF 235. The jury awarded a total of $6,761,376 in damages: $5,750,000 in lost profits damages for patent infringement; $191,156 in reasonable royalty damages for patent infringement; and $820,220 in damages for trademark infringement. *Id*. at 2, 4.

After trial concluded, TRX filed the instant motions. *See* ECF 248, 249. WOSS opposed only the motion for fees and enhanced damages. *See* Opp., ECF 251. On June 7, 2017, WOSS filed a notice of Chapter 7 bankruptcy in this Court. ECF 253. Pursuant to the automatic stay in the bankruptcy proceedings, the pending motions were terminated, and this case came to a halt. *See* ECF 254. In September 2018, the parties informed the Court that the bankruptcy stay had been lifted. *See* ECF 282. TRX promptly refiled its two pending motions. The motions are identical to those filed in 2017 in all respects. TRX also moved for the Court to reconsider its order invalidating TRX's '814 patent, which this Court granted, holding that WOSS failed to meet its burden at summary judgment of demonstrating that the '814 patent is invalid as obvious. ECF 293. Because WOSS had not opposed the permanent injunction motion at the time the motion was initially filed, the Court gave WOSS until November 8, 2018 to file an opposition, which WOSS

5

1 did not do.

## II. DISCUSSION

### A. Enhanced Damages for Patent Infringement

#### i. Legal Standard

Under 35 U.S.C. § 284, in a case of infringement, courts "may increase the damages up to three times the amount found or assessed." This is a punitive measure, intended as a "sanction for egregious infringement behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

In *Halo*, the Supreme Court held that § 284 "contains no explicit limit or condition" on when a district court may award enhanced damages, but instead allows courts to "punish the full range of culpable behavior." *Id*. at 1931, 1933. This "sort of conduct warranting enhanced damages has been variously described in [Supreme Court] cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id*. at 1932. None of these behaviors (including willfulness) are prerequisites for or automatic entitlements to enhanced damages; instead, "courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount." *Id*. at 1933–34. Nevertheless, enhanced damages are generally reserved for "egregious cases of misconduct beyond typical infringement," such as those "typified by willful misconduct." *Id*. at 1933, 1935.

Enhanced damages are governed by a preponderance of the evidence standard. *Id*. at 1934. In assessing the egregiousness of an actor's behavior, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Id*. at 1933. Thus, what matters is the actor's subjective state of mind at the time of the challenged conduct, not his objective reasonableness. *See id*. In addition, in *Read Corp. v. Portec, Inc.*, 970 F.3d 816, 826–27 (Fed. Cir. 1992), the Federal Circuit enumerated eight factors that may guide an analysis of "the egregiousness of the defendant's conduct based on all the facts and circumstances." The *Read* factors include:

(1) whether the infringer deliberately copied the ideas or design of another;

6

> (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.

*Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (quoting *Read*, 970 F.2d at 826–27. In light of *Halo*, which clearly stated that district courts are not bound by any rigid formula or set of factors, the *Read* factors are now one set of guidelines courts can use to evaluate alleged misconduct, but are no longer the sole set of criteria.

When a district court's decision to enhance damages is based in part on willfulness, "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo*, 136 S. Ct. at 1933. In addition, several other considerations remain relevant: First, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (citing *Halo*, 136 S.Ct. at 1932–33). Second, "*Halo* [did not] chang[e] the established law that the factual components of the willfulness question should be resolved by the jury." *Id.*; *see also Innovention Toys, LLC v. MGA Entm't, Inc.*, 667 F. App'x 992, 994 (Fed. Cir. 2016) (reasoning that because "the predicate of willful misconduct is established by the jury's finding that MGA was subjectively willful," remand was only needed for the district court "to exercise its discretion in accordance with *Halo*, including the emphasis on egregiousness," and determine whether enhanced damages were warranted).

### ii. Discussion

At trial, the jury found that "WOSS Enterprises engaged in willful infringement of the '896 patent." Verdict at 2. The Court's task at this post-verdict, pre-judgment stage is to assess, whether, in light of this finding and all of the other relevant circumstances of this case, enhanced damages under § 284 are warranted.

TRX argues that the Court should award enhanced damages in light of the jury's finding and also because several *Read* factors support enhancing damages, namely: (1) WOSS deliberately

7

copied the '896 patent; (2) WOSS knew of the '896 patent and "was unable to present any colorable non-infringement position at trial"; (3) WOSS's behavior during litigation was "exhausting and painful to both TRX and the Court," because it filed numerous motions without support and requested relief already denied by the Court; (4) the infringement case was not close; (5) WOSS has continued to sell its products with no remedial action; and (6) WOSS's motivation for infringement was to pirate off of TRX's goodwill and intellectual property. Dam. Mot. 4–9.

WOSS argues that, even in light of the jury's verdict, the Court should not award enhanced damages because WOSS "acted reasonably based on a good faith belief" that it was not infringing the '896 patent. Opp. at 1. Specifically, WOSS points out that, before it offered the Accused Products for sale, its founder, Mr. Ott, knew about the '896 patent, analyzed it, and concluded that the Accused Products did not infringe. *Id.* at 4. WOSS argues that this belief was reasonable because (1) the Court granted summary judgment of non-infringement with respect to TRX's other two patents (the '814 and '197 patents), *id.* at 1–2, 4,[1] and (2) there are differences between the '896 patent and the Accused Products, including: (a) the Accused Products have a rigid, metal "loop," not a flexible, fabric "loop," *id.* at 2; (b) the Accused Products have "grips" that are removably attached, not integrally attached, *id.* at 7; and (c) the Accused Products have an "elongated member" whose "length" does not change, *id.*

The Court agrees with TRX that, in light of the jury's verdict and all of the circumstances of this case, enhanced damages under § 284 are warranted.

Critical to this decision is WOSS's subjective intent at the time of infringement. To determine subjective intent, the Court looks to both direct and circumstantial evidence of that intent. The only direct testimony on the issue was that of Mr. Ott, who testified that he did not think that WOSS's product, the Titan, was infringing the '896 patent. *See* Trial Tr. at 801:9–14, 807:14–16, ECF 238–43. He also gave specific reasons for this conclusion: (1) the Titan had a rigid metal loop, *id.* at 801:16–807:6, 815:15–24; (2) the grips on the Titan were removably attached, *id.* at 809:22–811:15, (as to the '814 patent); and (3) the length of the strap does not

---

[1] This argument was made prior to the Court's reconsideration and denial of WOSS's motion for summary judgment that the '814 patent is invalid as obvious.

8

change, *id.* at 821:14–823:1. *See* Opp. at 5–6. But this was self-serving testimony, and the jury was free to find Mr. Ott not credible and disregard it. In finding that WOSS willfully infringed, the jury implicitly did just that. The Court defers to the jury's credibility assessment and would independently concur with the jury's conclusion and thus gives less weight to Mr. Ott's testimony.

In the absence of other direct testimony about WOSS's subjective intent, there is substantial circumstantial evidence to warrant finding egregious infringement. First, Mr. Ott knew about the '896 patent before WOSS started selling the Titan. Trial Tr. at 796:2–9; 808:10–15. By his own admission, "several times [he] studied it." *Id.* at 797:2. Second, Mr. Ott's copying was deliberate. *See id.* at 855:23–856:4 (admitting that he made the accused product intentionally, after reviewing the '896 patent). He testified that he did not know about suspension trainers until his business partner saw one at the gym and looked it up online with Mr. Ott. *See id.* at 785:16–25. He looked at other trainers, and then copied them to make one of his own. *See id.* Though he points out "improvements" that he made over existing trainers, these changes were not substantial. *See id.* at 794:22–795:23; *see also id.* at 818:22–823:2. Mr. Ott thus clearly intended to copy this patent; the Court's holdings as to other patents at issue in this case do not absolve him of this mal intent. On the whole, these actions are egregious.

In addition to Mr. Ott's subjective intent, WOSS's non-infringement positions were weak; this was not a "close case" as to infringement. (Indeed, ultimately, the jury was not persuaded by WOSS's non-infringement arguments.) At trial, WOSS did not offer any expert testimony and presented only two fact witness, one of whom testified for 11 minutes and the other of whom (Mr. Ott) testified for 2 and a half hours mostly as to willfulness, *see id.* at 760:10–844:5. The absence of a credible theory of noninfringement also calls into question Mr. Ott's self-serving testimony that he did not think he was infringing and circumstantially suggests that he intended to proceed with his infringing acts.

Finally, WOSS continued to sell the Accused Products after receiving a cease and desist letter in 2014, and has been infringing since 2011. *See id.* at 815:23–24; 856:6–8. Mr. Ott admitted that WOSS could have stopped selling the Accused Products at that point, but it did not. *See id.* at 856:17–21. Mr. Ott also admitted that WOSS could have "asked Fitness Anywhere if it

9

had any issues with any other potential redesigns of its products," but it did not. *See id.* at 857:1–8. And still now, even after an adverse jury verdict, WOSS or related entities continue to sell the Accused Products. *See* Christie Aff. ISO Dam. Mot. ¶¶ 4, 9–11, ECF 283-1; Sept. 18, 2018 Status Report at 5, ECF 282; Villaneuve Decl. ISO Status Report, Ex. 2, ECF 282-1. And WOSS does not mention in its briefing that it has taken any remedial action, such as redesigning the products.

Though this evidence is substantial, a few facts weigh against a finding of enhanced damages here. Most substantially, WOSS testified that other trainers, as well as TRX, were used as its inspiration for making the Accused Products. *See* Trial Tr. at 790:21–791:1. Likewise, WOSS's financial status weighs against such a finding. WOSS is a small company, with slim profit margins. *See* Trial Tr. at 887:18–21. On such margins, it might not be able to survive if it stops selling the Accused Products. *Id.* at 887:25–888:3. Indeed, WOSS filed for Chapter 7 bankruptcy directly after the adverse jury verdict. However, this last point also works against WOSS, as a finding of enhanced damages here will arguably not even impact the now-bankrupt company.

Ultimately, the Court finds that enhanced damages for patent infringement are warranted. TRX requests treble damages; however, the Court finds that double damages is more appropriate, given the lack of direct evidence of subjective intent and the few factors weighing against enhanced damages. As such, the Court GRANTS the motion for enhanced damages as to patent infringement for double damages totaling $11,882,312.

### B. Enhanced Damages for Trademark Infringement

#### i. Legal Standard

The Lanham Act permits a district court, in its discretion, to enter judgment "for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). If the court "find[s] the amount of the recovery based on profits is . . . inadequate," it may increase its award to "such sum as the court shall find to be just, according to the circumstances of the case." *Id.*; *see, e.g.*, *Tu Thien The, Inc. v. Tu Thien Telecom, Inc.*, No. CV-11-09899-MWF, 2014 WL 12580249, at *4 (C.D. Cal. July 11, 2014) (enhancing actual damages awarded by the jury under § 1117(a) where the "damages do not account for the intangible harm to

Plaintiff's reputation and goodwill"). This adjusted amount "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). Accordingly, the Ninth Circuit has cautioned that "[t]he district court ought to tread lightly when deciding whether to award increased profits." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1077 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 410 (2015). "Generally, actual, proven profits will adequately compensate the plaintiff. Because the profit disgorgement remedy is measured by the defendant's gain, the district court should award actual, proven profits unless the defendant infringer gained more from the infringement than the defendant's profits reflect." *Id.*

### ii. Discussion

At trial, the jury found that "WOSS Enterprises engaged in willful infringement of the [sic] TRX's 'Suspension Training' trademark" and awarded $820,220 in trademark damages. Verdict at 3. Because § 1117(a) authorizes damages only to compensate (not punish), the relevant question before the Court is whether the damage caused by WOSS's willful infringement of "Suspension Training" is such that the Court must increase the jury's award to adequately compensate TRX for the harm caused by WOSS's infringement.

In its briefing, TRX provides no reasons why the jury's award does not adequately compensate it for WOSS's willful infringement. *See generally* Dam. Mot. At trial, TRX's damages expert testified that TRX was entitled to $832,576 in damages for WOSS's infringement of "Suspension Training," which is what she calculated to be WOSS's total revenue for the products it sold that infringed the "Suspension Training" mark. *See* Trial Tr. at 634:16–639:11. The jury awarded almost all of this amount. *See* Verdict at 3 (awarding $820,220). In the absence of any evidence or argument that WOSS "gained more from [its willful infringement] than [its] profits reflect," the Court finds that these "actual, proven profits" adequately compensate TRX for WOSS's trademark infringement and will award just that. *Fifty-Six Hope Rd. Music*, 778 F.3d at 1077. A further increase in damages is not warranted. As such, the Court DENIES the motion for enhanced damages as to trademark infringement.

### C. Pre- and Post-Judgment Interest

### i. Legal Standard

11

For patent infringement, 35 U.S.C. § 284 provides that damages for infringement should be awarded "together with interest and costs as fixed by the court." *See also Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983). Prejudgment interest is meant to be compensatory and not punitive. *Oiness v. Walgreens Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996). The purpose of prejudgment interest is to put the patent owner "in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Gen. Motors*, 461 U.S. at 655. The rate of prejudgment interest is "left largely to the discretion of the district court." *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).

For trademark infringement, "[w]hile the Lanham Act does not mandate an award of prejudgment interest, 'federal common law authorizes the award of such interest in appropriate cases to victims of violations of federal law.'" *Cyclone USA, Inc. v. LL&C Dealer Servs., LLC*, No. CV 03-992-AJW, 2010 WL 2132378, at *1 (CD. Cal. May 24, 2010) (quoting *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)). "An award of pre-judgment interest in a case under federal law is left to the sound discretion of the trial court." *Twin City Sportserv., Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1310 (9th Cir. 1982). "Awards of pre-judgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." *United States v. Cal. State Bd. of Equalization*, 650 F.2d 1127, 1132 (9th Cir. 1981), *aff'd mem.*, 456 U.S. 901 (1982) (citation omitted).

As to post-judgment interest, under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." This language is mandatory, not discretionary. *See Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995). The post-judgment interest rate is calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

### ii. Discussion

WOSS does not oppose TRX's motion for pre- and post-judgment interest. *See* Opp.

Even if it had, however, the Court finds that awarding pre- and post-judgment interest is appropriate here. Post-judgment interest is automatic. As to pre-judgment interest on patent infringement, TRX did not unreasonably delay in brining suit and there is no evidence that pre-judgment interest is otherwise unwarranted. As to trademark infringement, the willful and deliberate nature of WOSS's infringement supports the Court's awarding pre-judgment interest in its discretion. The Court will apply the 52-week T-Bill rate, compounded annually for this pre-judgment interest. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2016 WL 3880774, at *18 (N.D. Cal. July 18, 2016), *rev'd in part on other grounds*, 879 F.3d 1299 (Fed. Cir. 2018) (citing Chisum, Patents, § 20.03).

The Court thus GRANTS TRX's motion for pre- and post-judgment interest. Pre-judgment interest shall be calculated using the 52-week T-Bill rate, compounded annually; post-judgment interest shall be calculated at a rate equal to the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of the judgment.

### D. Attorneys' Fees for Patent Infringement

#### i. Legal Standard

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In *Octane Fitness*, the Supreme Court explained that an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*; *cf. Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) ("[W]e are mindful that the district court has lived with the case and the lawyers for an extended period."). In considering the totality of the circumstances, the Supreme Court suggested that district courts could consider certain nonexclusive factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance

13

considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). A movant must establish its entitlement to attorneys' fees under § 285 by a preponderance of the evidence. *Id*. at 557–58.

### ii. Discussion

TRX argues that this is an exceptional case for a number of reasons, including: (1) WOSS "in effect, went to trial without a non-infringement position," as most of the testimony in its case-in-chief related to willfulness, Dam. Mot. at 5–6; and (2) WOSS made the litigation "exhausting and painful" by filing "endless motions without legal support and requesting relief previously denied by this Court," *id.* at 6. WOSS disagrees, arguing that (1) its case was substantively strong, as, at summary judgment, it fully prevailed on two of the Asserted Patents[2] and partially prevailed on the other; and (2) there is nothing unreasonable about how it litigated this case, particularly given its limited resources. Opp. at 6–7.

Although this is a close issue, the Court agrees that, on the margin, this case is exceptional, and TRX is entitled to limited attorneys' fees.

Throughout the litigation, WOSS filed numerous duplicative motions, attempting to re-litigate several issues including: (1) Judge Lloyd's award of sanctions, *see* ECF 84, 89, 108; and (2) the "flexible portion" claim construction issue, *see* ECF 155 (denying motion for administrative relief seeking leave to file a second summary judgment motion), ECF 183 (denying motion for administrative relief seeking to shorten the time for TRX to respond to WOSS's MIL #1), ECF 209 (order re MILs), ECF 251 (briefing on the instant motion attempting to re-litigate this issue). Moreover, WOSS chose to go to trial on infringement of the '896 patent despite the substantive weaknesses of its defenses, as discussed by the Court above in awarding enhanced damages. Ultimately, the jury determined that WOSS willfully infringed, further demonstrating the weakness of its position on the merits.

Weighing against finding this an exceptional case, however, is that WOSS fully prevailed on one of its Asserted Patents and partially prevailed on the other. Moreover, the much disputed

---

[2] This argument was made prior to the Court's reconsideration and denial of WOSS's motion for summary judgment that the '814 patent is invalid as obvious.

14

"flexible portion" claim construction issue was a close call—WOSS's arguments had merit. And of course, WOSS should not be punished merely for wanting to take its case to trial, as is its right as a litigant.

Given these facts, the Court finds it appropriate to award attorneys' fees only for WOSS's duplicative motions. Specifically, the Court awards fees for TRX's attorney time spent responding to ECF 106 (WOSS's second motion for relief from Judge Lloyd's order), ECF 151 (WOSS's motion for administrative relief requesting a second summary judgment motion), and ECF 181 (WOSS's motion for administrative relief requesting to shorten the time to respond to WOSS's MIL #1). The Federal Circuit has confirmed that a court need not award all attorneys' fees even though it concludes enhanced damages are warranted. *See Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 867 (Fed. Cir. 1997). The Court thus GRANTS IN PART AND DENIES IN PART TRX's request for attorneys' fees as to the aspects of the case relating to patent infringement. TRX is ORDERED to submit on or before December 14, 2018 a motion for attorneys' fees that includes a catalogue of the attorney hours spent briefing these three motions and a chart categorizing the attorney hours spent by the type of task completed and the motion as to which the task related.

### E. Attorneys' Fees for Trademark Infringement

#### i. Legal Standard

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "Generally, a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate, or willful." *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 825-26 (9th Cir. 1997) (quoting *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993)). The definition "refers to the nature of the defendant's infringement in a case where the plaintiff prevails." *Id*. Awarding attorneys' fees under § 1117(a) is discretionary. *Fifty-Six Hope Rd. Music,* 778 F.3d at 1079 ("[T]he plain language of the statute allows the court to choose whether to award fees, even after finding the case exceptional.").

Willful infringement occurs when the defendant knowingly and intentionally infringes on a

trademark. *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216–17 (9th Cir. 2003). Willfulness can also be inferred from a defendant's failure to defend. *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

### ii. Discussion

In addition to the reasons discussed above with respect to patent infringement, TRX makes the following arguments relevant to considerations of whether the trademark portions of this case are exceptional: (1) the jury found WOSS's infringement was willful, Dam. Mot. at 4; (2) WOSS "knew of and deliberately copied TRX's trademarks," *id.*; (3) WOSS admitted at trial that a significant part of its business strategy was to get in front of people who go online to look for a TRX product, *id.* at 8; and (4) WOSS behaved differently than most companies whom TRX has asked to stop infringing its trademarks, by refusing to stop using "Suspension Trainer" and "Suspension Fitness" in its listings, *id.* at 9. WOSS does not respond to these arguments. *See generally* Opp.

Although this is a close issue, the Court does not find that the trademark aspects of this case warrant an award of any attorneys' fees.

As discussed in the enhanced damages section, WOSS's trademark infringement was willful and deliberate. WOSS at least knew of TRX's trademarks as early as the March 2014 cease and desist letter. *See* Trial Tr. at 872:14–873:10. Mr. Ott admitted that part of WOSS's marketing strategy was to get in front of people who go online and look for TRX products. *Id.* at 862:8–16. Though Mr. Ott also testified that he did not believe that using "SUSPENSION TRAINER" would confuse people, *id.* at 831:25–832:2, 832:19–23, this was self-serving testimony and the jury was free to find Mr. Ott not credible and disregard it, which it implicitly did. The Court defers to the jury's credibility assessment. Moreover, WOSS continued to use "SUSPENSION TRAINER" after receiving the cease and desist letter. *Id.* at 873:11–15. Mr. Ott admitted that WOSS could have stopped using this phrase or used alternate phrases, but it did not. *Id.* at 873:16–874:13; *see also id.* at 874:14–877:15.

While significant, these facts do not necessarily render this case exceptional for the purposes of attorney's fees. WOSS's trademark infringement was neither malicious nor

16

fraudulent. And, perhaps more importantly, there was evidence that other people used phrases close to "SUSPENSION TRAINER," such that WOSS had a reasonable fair-use defense. That is, unlike its patent-infringement case, its litigating position was not exceptionally weak as to trademark infringement.

On balance, the Court declines to award any additional attorneys' fees besides those awarded for the duplicative motions related to the patents at issue. Nothing specific as to the trademark aspects of this case rises to the level of exceptional. Thus, the Court DENIES TRX's motion for fees as to the aspects of the case related to trademark infringement.

### F. Permanent Injunction

#### i. Legal Standard

Courts can award injunctive relief for both patent and trademark infringement. *See* 35 U.S.C. § 283. (Courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."); 15 U.S.C. § 1116(a) (Courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office."). The party seeking a permanent injunction must make a four-part showing: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006). There is no presumption of irreparable harm for patent infringement. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).

#### ii. Discussion

WOSS does not oppose TRX's motion for a permanent injunction. *See* ECF 251. However, even if it did, the Court finds that a permanent injunction is warranted in this case.

### a. Irreparable Harm

As an initial matter, demonstrating irreparable harm due to patent infringement requires a showing that a "causal nexus relates the alleged harm to the alleged infringement." *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012). "This just means that there must be proof that the infringement causes the harm." *Apple Inc. v. Samsung Elecs. Co.*, 801 F.3d 1352, 1358 (Fed. Cir. Sept. 17, 2015), *amended*, 809 F.3d 633 (Fed. Cir. Dec. 16, 2015). "When a patentee alleges it suffered irreparable harm stemming from lost sales solely due to a competitor's infringement, a finding that the competitor's infringing features drive consumer demand for its products satisfies the causal nexus inquiry. In that case, the entirety of the patentee's alleged harm weighs in favor of injunctive relief." *Id*. at 1359. TRX satisfies this antecedent requirement because Claim 1 of the '896 Patent reads on the entirety of each of the Accused Products, rather than a mere portion or part of them. Trial Tr. at 307:3–6. Likewise, WOSS used TRX's Suspension Training marks deliberately to attempt to attract customers away from TRX. *Id.* at 867:8–11.

Having established this causal connection, TRX successfully demonstrates that it will suffer irreparable harm without an injunction. First, WOSS directly competes with TRX. *Id.* at 812:17–24; *see also id.* at 862:8–16, 866:19–21. Courts have held that irreparable harm exists where the parties directly compete. *See Robert Bosch*, 659 F.3d at 1151–52 ("[T]he district court committed a clear error in judgment when it concluded that Bosch failed to demonstrate irreparable harm" in part because there was "undisputed evidence of direct competition in each of the market segments identified by the parties."). This direct competition has caused TRX's prices to erode. *See id.* at 498:14–499:17; 630:24–25. This price erosion supports a finding of irreparable harm. *See Robert Bosch*, 659 F.3d at 1151–52; *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382 (Fed. Cir. 2007). Finally, TRX lost significant market share and revenue due to WOSS's past infringement, Trial Tr. at *id*. at 553:22–554:24, 557:10–16, demonstrating that continued infringement would likewise harm TRX, *see i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861–62 (Fed. Cir. 2010).

### b. Remedies at Law

The remedies at law in this case are inadequate to compensate TRX for the harm it has and will continue to suffer. WOSS, or a related corporate entity, continues to infringe the patent and trademark even after the adverse verdict in this case. *See* Christie Decl. ¶¶ 4, 9–11; Sept. 18, 2018 Status Report at 5; Villaneuve Decl., Ex. 2. Were TRX to pursue another action against WOSS for this continued infringement, WOSS most certainly could not pay damages, as it operates on a slim margin, Trial Tr. at 887:18–21, and has now filed for Chapter 7 bankruptcy. *See, e.g.*, *Canon, Inc. v. GCC Int'l Ltd.*, 263 Fed. Appx. 57, 62 (Fed. Cir. 2008) (holding that the likelihood that the patentee would be unable to collect a money judgment weighed in favor of an injunction).

### c. Balance of Hardships

The Court finds this factor is neutral. As a result of WOSS's infringement, as discussed above, TRX has suffered shrinking sales to its suspension trainers, which are a core part of its business. And the Accused Products comprise only 25% of WOSS's total product line. *Id.* at 882:8–884:17. However, without the ability to sell these products, it appears that WOSS has been unable to stay afloat on its other products alone, given it has now filed for bankruptcy. *See also id.* at 887:17–888:8. Bankruptcy is perhaps the ultimate hardship.

### d. Public Interest

This final factor clearly favors TRX. The public interest favors the enforcement of intellectual property rights. *See Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006). WOSS has not, and seemingly cannot, point to some exception to this general rule that would support an argument that its continued infringement somehow serves the public interest.

\* \* \*

Because three of the four factors for granting a permanent injunction favor TRX, the Court GRANTS TRX's motion for a permanent injunction, the terms of which are set forth in the contemporaneously filed order granting permanent injunction.

## III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

- TRX's motion for enhanced damages is GRANTED as to patent infringement for

19

1  double damages totaling $11,882,312.

- TRX's motion for enhanced damages is DENIED as to trademark infringement.
- TRX's motion for pre- and post-judgment interest is GRANTED. Pre-judgment interest shall be calculated using the 52-week T-Bill rate, compounded annually; post-judgment interest shall be calculated at a rate equal to the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of the judgment.
- TRX's motion for attorneys' fees is GRANTED IN PART AND DENIED IN PART as to patent infringement, with fees awarded only for briefing in response to WOSS's filings at ECF 106, 151, and 181. TRX is ORDERED to submit **on or before December 14, 2018** a motion for reasonable attorneys' fees that includes a catalogue of the attorney hours spent briefing these three motions and a chart categorizing the attorney hours spent by the type of task completed and the motion as to which the task related.
- TRX's motion for attorneys' fees is DENIED as to trademark infringement.
- TRX's motion for a permanent injunction is GRANTED as set forth in the contemporaneously filed permanent injunction order.

**IT IS SO ORDERED.**

Dated: November 20, 2018

BETH LABSON FREEMAN
United States District Judge